THOMAS WILKINSON, ADMINISTRATOR, v. CATHERINE CONATY AND ROSANNA CONATY.

*Estates of deceased persons—Petition for appointment of administrator—Application of creditor—Affidavit of publication—Commissioners on claims—Notice of hearing.*

1. On the failure of the widow or next of kin to apply for letters of administration within the statutory thirty days, *any* creditor may make such application, and need not allege in his petition that he is one of the *principal* creditors of the deceased, nor that no application has been made by the widow or next of kin; which last fact will be determined from the files and records of the probate court, of which the judge will take judicial notice, who will also determine whether the person whose appointment is requested is a *principal* creditor and *competent* to act, which determination cannot be called in question or contested after such appointment save by appeal from the order of appointment.

2. The petition for the appointment of an administrator *must* be made by some one *interested* in the estate, and must set forth facts necessary to give the court jurisdiction, namely, that the deceased died *intestate*, and was, at time of his death, either an inhabitant or resident of the county in which the application is made, or, if he died without the State, that he left an estate in said county to be administered. The other matters usually contained in such petition are matters of practice designed to inform the court, and enable it to fix a proper time for the hearing, and determine what notice is proper to be given.

3. It is not necessary, in an order for the appointment of an adminis-

trator, to specify the *relation* which the appointee holds to the estate.

4. How. Stat. § 7497, does not require that the notice referred to therein shall be cut from the newspaper in which it is published, but that the notice annexed to the affidavit of publication shall be *identical* with the one published; nor is it necessary to state in said affidavit the day of publication in *each* week, but an affidavit stating that the notice has been published *once* in *each* week for *four* successive weeks, giving the date of the *first* publication, sufficiently specifies the *times* when the notice was published.

5. If notice to creditors of the hearing of claims against the estate of a deceased person is actually given as required by law, the commissioners have jurisdiction to act, and the statute does not require the filing with them of proof of the publication of such notice as a condition to their so acting. *Schlee v. Darrow Estate,* 65 Mich. 373.

Appeal from Washtenaw. (Joslin, J.) Argued April 8, 1887. Decided April 28, 1887.

Bill for an accounting, and to declare land previously deeded and mortgage assigned to be assets, to be disposed of for the payment of debts, etc. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*G. W. Turnbull (Edwin F. Conely,* of counsel), for complainant.

*William Look (Edgar Weeks,* of counsel), for defendants.

CHAMPLIN, J.    On the fourth of April, 1878, Rose Conaty, who then resided in Washtenaw county, Michigan, was the owner in fee of certain lands in that county, described as lots 4, 5, 6, 7, 8, and 9, and the west part of lot 32, in block 1 of the original plat of the village of Chelsea; also lot 61 of block 4 according to said plat; and lot 17 of block 5 of James M. Congdon's second addition to the village of Chelsea.

In 1867 she executed to Richard Alchin her promissory,

note, secured by mortgage, for $1,000, with annual interest at 10 per cent., payable as therein specified.

On October 6, 1877, she obtained from Alchin a release of a part of the mortgaged premises, and at the same time she executed to him a mortgage covering other property to secure whatever sum was then remaining due on the mortgage given in 1867.

On the twenty-ninth day of August, 1876, she conveyed to James Conaty certain lands, and took back a note for $1,200 secured by mortgage upon the same lands; and this note and mortgage she was the owner of and held on the fourth day of April, 1878, at which time she was indebted, in addition to what she owed Alchin, to several individuals in small sums, amounting in the aggregate to about $154. The two largest of these claims were evidenced by promissory notes, and were held by Thomas Wilkinson and by Phillip Keusch.

On the fourth of April, 1878, Rose Conaty, being the owner of the land first and of the mortgage last above mentioned, and being ill and near her final dissolution, made a disposition of all her property, presumably with testamentary intent, as follows: She conveyed to her daughters Catherine and Rosanna Conaty by quitclaim deed the lands first above described, and she assigned the mortgage last above described to her said daughters, together with the note therein mentioned. The body of this assignment contained these words:

"This assignment is made with the understanding and upon the condition that upon my death said Catherine and Rosanna Conaty shall pay my personal debts."

Very soon after these conveyances, Rose Conaty died intestate. One witness testified that her death occurred within a day or so after the papers were executed. Her next of kin and heirs at law were John Conaty, Ann Harrington, Rosanna Conaty, Catherine Conaty, James Conaty, Richard

Conaty, and Margaret Conaty. No action by the next of kin was taken for the appointment of an administrator, and on the sixth of January, 1879, Thomas Wilkinson and Phillip Keusch petitioned the probate court, as creditors of the deceased, for the appointment of Thomas Wilkinson, or some other suitable person, administrator. Wilkinson was appointed, and qualified. Commissioners on claims were also appointed, and allowed claims against the estate to the amount of about $150. The principal claim allowed was $88.08 in favor of Thomas Wilkinson, based upon a promissory note. The administrator found no property to administer. He, however, made claim to the real estate and mortgage conveyed by Rose Conaty to defendants as property of his intestate which was liable for the payment of the debts of the deceased.

Later, and on November 11, 1881, James Conaty contracted to sell the real estate conveyed to him by Rose Conaty, and upon which he had executed the mortgage above referred to. The purchasers, learning of the claim made by Mr. Wilkinson as administrator, refused to complete the purchase until the mortgage was discharged, and some arrangement made for the payment of the debts due from the estate. In order to discharge the mortgage and free the land from any claim of the administrator, to the end that the sale might be consummated, and they receive the money secured by such mortgage, defendants paid to a Mr. Taylor, for the benefit of Mr. Wilkinson as administrator, $30, which they directed should be handed to him, and also executed the agreement following, viz.:

"ANN ARBOR, November 11, 1881.

"We, the undersigned, agree to pay the sum of one hundred and forty-four dollars and eight cents out of lots (seven) 7, 8, 9, and 22 in block one, and lot 61 in block 4, of the original plat of Chelsea, Michigan, and lot No. 17 in J. M. Congdon's second addition, in block five; it being the balance of debts against the estate of Rose Conaty, deceased; and

that this shall be understood to be a mortgage lien on said lots to the payment of the said debts.

"CATHERINE CONATY. [Seal.]
"ROSANNA CONATY. [Seal.]
"W. E. DEPEW.

"Signed, sealed, and delivered in presence of
"D. B. TAYLOR.
"CHARLES CANFIELD."

Mr Depew had no interest in the land or matters in controversy, and why he signed the agreement does not appear. He was an attorney at law, and was the legal adviser of defendants, and advised them in the arrangements then made. The sum named in the contract was the balance of the indebtedness of Rose Conaty's estate, after deducting the $30 above mentioned. At the time this transaction was consummated, the defendants admitted that the claims against the estate proved before the commissioners were to be paid by them. They have, however, neglected to do so, and the administrator brings this his bill of complaint against them, setting up the foregoing facts, and prays therein that the assignment of the mortgage to defendants on April 4, 1878, may be declared void as against said administrator, and that defendants may account to him for the proceeds thereof, and pay the same over to him as assets belonging to said estate of Rose Conaty, deceased; and, further, that the deed of real estate from Rose Conaty to defendants be set aside and declared null and void, and the said real estate be declared to be assets of the deceased, and that sufficient thereof be sold, under the decree of this court, to pay all of said proved debts, with interest and costs, together with the cost of administration; and for other and further relief.

The circuit court, after a hearing upon pleadings and proofs, pronounced a decree reciting the main facts which it found established by the evidence, and thereupon decreed the instrument of November 11, 1881, to be an equitable mortgage upon the real estate therein described, to secure the

payment of the debts so proved against the estate of Rose Conaty, deceased, with interest and expenses of administration, and ordered the same to be paid, with costs, within a time therein fixed, and, in default thereof, the premises to be sold as in ordinary cases of foreclosure.

Defendants have appealed to this Court. The argument in this Court in behalf of appellants was directed mainly to the third point stated in the brief of counsel, which is that Thomas Wilkinson is not and never was the administrator of Rose Conaty, deceased. This objection is based upon the want of jurisdiction of the probate court to make the appointment. The particular objections pointed out and relied upon are the following:

1. The petition for the appointment of an administrator failed to state that Thomas Wilkinson was a "principal creditor."

2. It failed to show that administration had not been prayed by the widow or next of kin for 30 days after the death of the intestate.

3. It failed to state that the widow or next of kin are unsuitable or incompetent to have the administration.

The statute (How. Stat. § 5849) provides that administration of a person dying intestate shall be granted to some one or more of the persons, and they shall be respectively entitled to the same in the following order:

"1. The widow or next of kin, or both, as the judge of probate may think proper, or such person as the widow or next of kin may request to have appointed, if suitable and competent to discharge the trust.

"2. If the widow or next of kin, or the person selected by them, shall be unsuitable or incompetent, or if the widow or next of kin shall neglect for thirty days after the death of the intestate to apply for administration, or to request that administration be granted to some other person, the same may be granted to one or more of the principal creditors, if any such are competent and willing to take it.

"3. If there be no such creditor competent and willing to take administration, the same may be committed to such

other person or persons as the judge of probate may think proper."

The petition for administration was made in this case by Thomas Wilkinson and Phillip Keusch, setting forth therein that they were creditors of the deceased; the said Wilkinson holding a note against deceased amounting to $75 for principal and interest, or thereabouts, and said Keusch holding a note against deceased for $35 and upwards, both of which notes were overdue. It thus appears that they were creditors, and interested in having the estate administered. But counsel for defendants claim that the petition should show that they are the "principal creditors" of the estate, and that this averment is requisite in order to confer jurisdiction upon the probate court to act.

The statute does not require the petition for administration to be made by the principal creditors of the deceased. If no application is made by those authorized in subdivision 1 of the section above cited within 30 days after the death of the intestate, then any creditor may apply to the probate court to have the estate administered. The court, acting upon such application, may grant administration to one or more of the principal creditors. The question as to whether the person whom the petitioner requests to be appointed is a principal creditor, as well as the question of his competency, are subjects of inquiry and judicial determination upon the hearing of the petition, and, after the appointment is made, cannot be afterwards called in question or contested save upon appeal from the order of appointment. If the petition is made by a creditor after the expiration of 30 days from the death of the deceased, it need not state that no application has been made by the widow or next of kin, for the court will take judicial notice of its own files and records, and whether any application has been made by the widow or next of kin.

By the Constitution, courts of probate have such jurisdiction, powers, and duties as shall be prescribed by law. The law prescribes that they shall be courts of record, and have a seal, and shall keep a record of their proceedings; that they shall have power to take probate of wills, and to grant administration of the estates of deceased persons who were, at the time of their decease, inhabitants of or residents in the same county, and of all who shall die without the State, leaving any estate within such county to be administered; to appoint guardians to minors and others in cases prescribed by law; and shall have and exercise such other powers and jurisdiction as are or may be conferred by law; and they shall have jurisdiction of all matters relating to the settlement of the estates of such deceased persons, and of such minors and others under guardianship. How. Stat. *c.* 248.

The petition for the appointment of an administrator must be made by some one interested in the estate, and must set forth facts necessary to give the court jurisdiction. *Shipman v. Butterfield,* 47 Mich. 487.

But what are jurisdictional facts? They are that the person whose estate is to be administered died intestate, and was, at the time of his death, either an inhabitant or resident of the same county in which the application is made, or, if he died without the State, that he left an estate in the county to be administered. If these facts appear, the court has jurisdiction to appoint an administrator upon the petition of a party interested. The other matters usually contained in a petition are matters of practice designed to inform the court, and enable it to fix a proper time for hearing, and determine what notice is proper to be given. These jurisdictional facts all appear in the petition filed in this case, and the objections to such jurisdiction are therefore overruled.

The statute (How. Stat. § 5866) also provides that, when application is made for the appointment of an administrator,

the judge of probate shall cause notice of the same, and of the time and place of hearing thereof, to be published for three successive weeks in such newspaper as he may direct. This section of the statute was complied with, and Thomas Wilkinson was appointed administrator.

It is claimed that such appointment was void, because—

1. It does not appear, in the order making the appointment, that Wilkinson was next of kin, or that he was a principal creditor.

2. That it does not appear from the affidavit of publication of the notice of hearing that the notice annexed to the affidavit " was taken from the paper in which the notice was printed."

3. It did not specify the times when the notice was published.

It was not necessary, in the order making the appointment, to specify the relation which the person appointed held to the estate. Upon the hearing, the court could appoint the next of kin, a principal creditor, or any person competent and willing to take the appointment; and, if no appeal is taken, the action of the court is conclusive.

The affidavit sets forth the order published, which appears to be a copy of the order made by the court, attested as a true copy by the probate register, and it states that—

"The annexed notice has been duly published in said paper at least once in each week for four successive weeks, and that the first publication thereof was on the tenth day of January, A. D. 1879."

This is a sufficient compliance with the statute providing that an affidavit of the printer, etc., " annexed to a printed copy of such notice taken from the paper in which it was published, and specifying the times when," etc., may be filed with the judicial officer before whom the proceeding shall be pending. The statute does not require that the notice shall be cut from the paper. What it does require is identity of the notice annexed with that published, and that is complied with in the affidavit under consideration. The day of

the publication in each week need not be specified. An affidavit stating that it has been published once in each week for four successive weeks, and the first publication was on the tenth day of January, A. D. 1879, sufficiently specifies the times when it was published.[1]

It is further urged that the commissioners on claims had no authority to hear and allow claims against the estate, because at the time they acted there was no proof before them that the notice to creditors had been published. It appears in the record before us that the notice was in fact duly published. They had jurisdiction, therefore, to proceed to hear and allow claims. The statute does not require that proof of giving the required notice shall be made and filed with them before they are authorized to act. We held in the case of *Schlee v. Darrow Estate, ante*, 373, that the fact that notice of a guardian's sale was duly given as required by law was the essential point, and that it was of no importance that proof of the fact was not filed in the probate court before sale, and that it was immaterial when the proof of that fact was produced.

We are referred to the case of *Gillett v. Needham*, 37 Mich. 143, as lending support to the position assumed by the defendants. That case decides that, to authorize the appointment of an administrator, notice of the hearing must be given; for it is only in this way that the court obtains jurisdiction of the parties interested, and they are brought before it by due publication of notice of the appointment. In that case the only proof of publication was an affidavit which entirely omitted the name of the paper in which the notice was published. It did not, therefore, show that the notice was published in the paper ordered by the court, or that the annexed notice was taken from any newspaper. There was a total lack of proof of publication, and as a matter of course the appointment could not be sustained. The other

---

[1] See *Feustmann v. Gott Estate, ante, 592.*

authorities cited upon the argument are in harmony with the views above expressed.

The decree of the circuit court is affirmed, with costs.

The other Justices concurred.