*In re* SPRAGUE'S ESTATE ( two cases ).

SPRAGUE *v.* MOORE.

WILLS—REVOCATION—ADMINISTRATOR—APPOINTMENT—NECESSITY.

*1. Conveyance of all of one's property revokes a previous will
   disposing of the same property.
2. The statute ( 3 Comp. Laws 1897, § 9324 ) prescribing who
   shall be appointed administrator of the estate of a deceased
   person applies to the situation at the time letters of adminis-
   tration are granted, and not the situation at the time of the
   death of the deceased.
3. The party entitled under the statute to letters of administra-
   tion waives that right by a failure to apply therefor within
   the time prescribed.
4. One who is beneficially interested in the estate of a deceased
   person is entitled to make application for the appointment of
   an administrator.
5. Where one deeds all his property in trust, the same to be
   divided among the *cestuis que trustent* at his death, and the
   declaration of trust provides that the trustee shall pay all

---

* Head-notes by GRANT, J.

the debts of the grantor then existing, and all renewals of the same, and the trustee accepted the trust and carried it during the lifetime of the grantor, a period of 10 years, and after his death the *cestuis que trustent* filed a bill for an accounting, it is necessary to have an administrator appointed over the estate of the deceased grantor, and that it be made a party to the bill for an accounting.

Submitted November 14, 1900.   Decided December 4, 1900.

Error to Wayne; Waite, J.

Irene Sprague Moore presented for probate the last will and testament of Adeline L. Sprague, deceased.   Probate was denied, and proponent appealed to the circuit court. From a judgment for contestants (Thomas S. Sprague and Rollin C. Sprague), proponent brings error.   Affirmed.

*Certiorari* to Wayne; Waite, J.

Thomas S. Sprague petitioned to be appointed administrator of the estate of Amelia L. Sprague, deceased.   The petition was granted in the probate court, and Irene Sprague Moore appealed to the circuit court.   From a judgment for petitioner, contestant brings *certiorari.* Affirmed.

Appeal from Wayne; Hosmer, J.

Bill by Thomas S. Sprague against Irene Sprague Moore, as trustee and individually, and others, heirs at law of Adeline L. Sprague, deceased, for an accounting. From an order overruling her demurrer to the bill, defendant Moore appeals.   Reversed.

These three suits are so intimately connected, involving the same documents, that they will be disposed of in one opinion.   Adeline L. Sprague, the mother of the appellant, duly executed her will on September 3, 1877, in which,

after bequeathing to her daughters, equally, her household furniture, books, etc., used in connection with her homestead, she bequeathed all the residue and remainder of her estate to her children, equally. On April 22, 1889, she conveyed to the appellant, Irene Sprague Moore, all her property, real, personal, and mixed, in trust for the express uses and purposes set forth in an instrument bearing even date therewith. The deed also empowers the trustee "to sell, transfer, convey, collect, invest, and reinvest the same, and to do all things necessary or proper in connection therewith which said first party might or could do or could have done but for these presents." She reserved a life estate in her homestead in the city of Detroit. The declaration of trust reads as follows:

"1. That said Irene Sprague Moore, as trustee, shall take, hold, manage, care for, sell, transfer, convey, collect, invest, and reinvest the property by said deed conveyed, in her best discretion, during the lifetime of said Adeline L. Sprague, and to that end do all and any things necessary or proper in connection therewith.

"2. That said trustee shall pay all and any legal and necessary expenses incident to the trust, and all actual and *bona fide* indebtedness of said first party now existing on which she is liable as principal; also, all indebtedness which she is or may become legally bound to pay, whether as surety, indorser, or maker of any promissory notes or other obligations now existing, made or incurred for the accommodation or benefit of others, and which such others should, or of right ought to, pay.

"3. Out of the income, if there shall be sufficient at all times, otherwise from the principal as may be needed, to yield and give said first party a full and ample support during her natural life, according to the station in life she now occupies,—and, for a definition thereof, it shall be at least the sum of three thousand dollars per annum, if so demanded, payable in monthly installments, or as she shall request,—and in addition thereto all extraordinary expenses, medical and other attendance, or other expenditures necessary or proper for the said first party's comfort or welfare; also, to pay all funeral and cemetery expenses of the death and burial of said first party, and for the erection of a suitable monument over her grave, the same to

be in said trustee's discretion.    And for any expenditure made in her discretion under this clause of this instrument she shall be accountable to no other beneficiary under this trust.    During the lifetime of said first party, out of any remaining income, said trustee, in her discretion, may pay to each of the beneficiaries, and to all of full age alike, annually, a sum not exceeding one thousand dollars per year; and any sum withheld from the minor beneficiary, Gracie Deats, shall be equalized at, if not before, the termination of this trust.

"4. The other beneficiaries under this trust are my seven children, Amelia L. Sprague, Irene Sprague Moore, Rollin C. Sprague, George H. Sprague, Mary A. Stoflet, Ida L. Taylor, Thomas S. Sprague, and my granddaughter, Gracie Deats; and it is my desire, and the purpose of this trust, that they shall share equally and ratably in all past, present, and future benefits received from me and my estate, including this trust estate.    I therefore direct that, as soon as practicable after my death, said trustee shall proceed to the distribution of the trust estate among all of said persons as if she were executor and this was my last will.    In making such distribution, all advances made by me heretofore to each and all of them, all debts due or to become due from them to me or my trustee, and all payments made by me or my trustee, and advances made to Hattie A. Deats (which shall be charged to Gracie Deats), and all hereafter, on the account or for the benefit of each and all of them, shall be considered as part of said trust estate for the purpose of ascertainment of the share of each; and each shall be paid the amount of such share, less such advancements, charges, debts, or payments.    Obligations heretofore entered into for the benefit of any of said beneficiaries, and hereafter paid by said trustee, shall bear interest at six per cent. per annum, and be charged to such beneficiary's share.

"5. Should any of said beneficiaries die before me, his or her share shall be paid to his or her estate for distribution according to the laws of Michigan.

"6. Any statement of advances, payments, charges, and debts hereafter signed by said first party shall hereafter be considered as final, and shall not be questioned by trustee or beneficiaries."

Mrs. Moore accepted the trust, and proceeded to execute it.    Amelia L. Sprague, an incompetent, died Jan-

uary 13, 1892. Adeline L. Sprague died May 1, 1899. The only property which it is suggested was not covered by the trust was, as testified to by the husband of Mrs. Moore, "some household furniture, and things that she had bought in the ordinary course of living; and she had those on hand at the time of her death." These were of insignificant value; the witness testifying that such things, he presumed, cost $200 to $400. Forty dollars in money was found in the house. The trustee took possession of this property, and divided a part of it among the children, sold the remainder, and has the money. Mrs. Moore presented the above-named will for probate. Probate was denied upon the ground that it was revoked by the trust deed. That is the question involved in the first-named suit.

In suit No. 2, Thomas S. Sprague applied for letters of administration upon the estate of Amelia L. Sprague, deceased. This was upon the theory that it was proper, if not necessary, to make her estate a party to the bill filed for an accounting against the trustee, Mrs. Moore. Mrs. Moore contested the appointment of an administrator upon the ground that "the petitioner was not the husband or next of kin, or a grantee of any one of them, or a creditor of the deceased, or in any way interested in the estate, and therefore had no power to petition to have an administrator appointed." The court overruled the objection, and appointed an administrator.

In the third suit a bill was filed against the trustee for an accounting. All the children of Adeline L. Sprague, and her granddaughter, and the estate of Amelia, are made parties to that bill. To this bill the trustee demurred, for the following reasons: (1) That the legal representatives of Amelia L. Sprague are not made parties defendant to the suit; (2) that the legal representatives of Adeline L. Sprague are not made parties defendant to the suit. This demurrer was overruled, and from that decree the trustee has appealed.

*Moore & Moore,* for appellant.

*George W. Radford,* for appellee Thomas S. Sprague.

*Gray & Gray,* for appellee Rollin C. Sprague.

GRANT, J. (*after stating the facts*). 1. The sole question in suit No. 1 is, Did the trust deed and the declaration of trust revoke the will? The statute of this State governing the revocation of wills is quoted in full in *Lansing* v. *Haynes,* 95 Mich. 18 (54 N. W. 699, 35 Am. St. Rep. 545). We there stated and applied the doctrine of implied revocation. The conveyance of real estate and the transfer by sale or gift of personal property revoke wills devising the same property. The conveyance of all the property devised revokes the will *in toto,* and conveyance of part of the property revokes the will *pro tanto.* Chancellor Kent thus states the law upon the subject:

"The doctrine, hard and unreasonable as it appears in some of its excrescences on this subject, and notwithstanding it has been repeatedly assailed by great weight of argument, has nevertheless stood its ground immovably, on the strength of authority, as if it had been one of the essential landmarks of property. The cases have been investigated and discussed with the utmost research and ability by the courts of law and equity, and the principle again and again recognized and confirmed that, by a conveyance of the estate devised, the will was revoked, because the estate was altered, though the testator took it back by the same instrument, or by a declaration of uses. The revocation is upon the technical ground that the estate has been altered or new modeled since the execution of the will. The rule has been carried so far that, if the testator suffered a recovery for the very purpose of confirming the will, it was still a revocation, for there was not a continuance of the same unaltered interest. There is an exception to the rule in the case of mortgages and charges on the estate, which are only a revocation in equity *pro tanto,* or *quoad* the special purpose, and they are taken out of the general rule on the fact of being securities only. These doctrines of the English cases have been reviewed in this country, and assumed to be binding, as part of the settled jurisprudence of the land." 4 Kent, Comm. 530.

The same rule is stated in Smith, Prob. Law, 51; 2 Greenl. Ev. § 686; and by other law writers.

In *Emery* v. *Union Society*, 79 Me. 334 (9 Atl. 891), decided in 1887, a conveyance of land was held to revoke *pro tanto* the devises. The court said on page 341:

"In *Brydges* v. *Duchess of Chandos*, 2 Ves. Jr. 417, the chancellor declared this to be a principle of the common law not to be shaken in point of authority. It is the rule laid down in all of the elementary works on wills and devises, as well as in the multitude of adjudicated cases."

We approved the doctrine in *Lansing* v. *Haynes*, *supra*. The rule is too firmly settled to require further citation of authorities. They are cited in the text-books, and we do not deem it important to further refer to them. Applying the rule to this case, but one conclusion is possible. The testatrix expressly conveyed to the trustee the absolute title in fee to all her real estate, and also the absolute title to all her personalty, merely retaining a life interest in the homestead. The intent to revoke her will and replace it by the trust deed could not be more clearly shown. Neither had she then, nor at her death did she leave, any other property than that covered by the trust deed. It is evident that the trustee and the *cestuis que trustent* so understood it; for the trustee took possession of the little personal property which the mother had bought subsequently to the trust deed, and the $40 in money, and disposed of them as trust funds, by the acquiescence of the *cestuis que trustent*. If, however, it be held that she acquired property after the making of the trust deed, this would not revive the will, which had been absolutely revoked by the trust deed. *Herrington* v. *Budd*, 5 Denio, 321; 29 Am. & Eng. Enc. Law, 308. This case must therefore be affirmed.

2. In case No. 2 it seems to be assumed that the estate of Amelia was a proper party defendant. It is unimportant, therefore, in this suit, to determine the legal *status* of the interest of Amelia, given to her by the trust deed, after her own and her mother's death. It is only neces-

sary to say that Amelia's share, her mother being dead, now goes to the other *cestuis que trustent*, subject to the rights of her creditors. Creditors are the only others who can have any claim upon her estate, and can interfere to prevent the distribution of the entire estate among the *cestuis que trustent*. Amelia was an incompetent. Her mother was appointed her guardian by proper proceedings in 1876, and continued as her guardian until her death. She was maintained at the asylum at Kalamazoo, and her expenses for her care and maintenance have been paid. No one for 8 years asked for administration upon her estate. Under the circumstances, it would be well-nigh absurd to hold that administration was necessary for the benefit of creditors. Creditors do not wait 8 years without taking any steps to enforce their claims against the estate of their deceased debtor. But, upon the assumption that her estate is a proper party, was her brother Thomas a proper party to put the court in motion? He was not only beneficially interested in the estate of his sister Amelia, but was one of the next of kin at the time of the application for letters of administration. The mother, while living, would, under the statute, have been entitled to letters of administration, had she proceeded seasonably; but she neglected, not only for 30 days, but for 8 years, to apply. The statute does not say that, where the mother has died before applying for letters of administration, such application must be made by, and letters issued to, her administrator. The statute applies to the situation at the time letters of administration are granted, and not to the situation at the time of the death of the deceased. Schouler, Ex'rs & Adm'rs, § 97; *Carthey* v. *Webb*, 6 N. C. 268; *Griffith* v. *Coleman*, 61 Md. 250; *Myers* v. *Cann*, 95 Ga. 383 (22 S. E. 611); *In re Woods' Estate*, 97 Cal. 428 (32 Pac. 516); *In re McLaughlin's Estate*, 103 Cal. 429 (37 Pac. 410).

Another fatal objection to the appellant's contention is that the widow waived her right to letters of administration by a failure to apply therefor for more than 30 days

after Amelia's death. She, if living, would not be in position to question the jurisdiction of the court, as she had waived her right under the statute by failure to proceed; neither could the administrator of her estate, because it is already shown that the law does not give to such a person the right of administration which it gave to his intestate. The probate court obtained jurisdiction by the petition of one who was beneficially interested in the estate. No creditor appears, contesting his right under the statute; neither is it shown or pretended that there are any creditors. In such case the probate court may appoint a suitable person administrator, and that appointment is binding upon all parties. *Atkinson* v. *Hasty*, 21 Neb. 663 (33 N. W. 206); *Garrison* v. *Cox*, 95 N. C. 353; *Johnson* v. *Johnson*, 15 R. I. 109 (23 Atl. 106). Also, see *Wilkinson* v. *Conaty*, 65 Mich. 614 (32 N. W. 841). In some instances the express words of the statute have been disregarded in order to give the management of the property to those beneficially interested. *Johnson* v. *Johnson, supra*, and authorities there cited. The evident purpose of this statute is to place the administration in the hands of some one beneficially interested. If the widow has assigned and sold all interest in her husband's estate prior to the petition for the appointment of an administrator, she would not be entitled, as a matter of law, to such appointment. The statute means the widow who has an interest in the estate of the deceased, and not the widow who has parted with her entire interest. The order of the probate court appointing an administrator is therefore affirmed.

3. Is the estate of Adeline L. Sprague a necessary party to the bill for an accounting? My brethren are of the opinion that it is, and I yield my own views in the matter to theirs. This case will therefore be reversed, and remanded for further proceedings.

We suggested upon the argument that there was little excuse for this litigation. More than a year and a half has expired since the death of Mrs. Sprague, and nothing

has been done except the filing of this bill, more than a year ago. It was a case for prompt action, in order that the beneficiaries might receive what their mother had left them. Had the proper harmony existed among the beneficiaries and the trustee, settlement could have been effected long since. The law upon the revocation of wills is so well established that we think there was no occasion for presenting the will for probate. We also think there was little occasion for contesting the appointment of an administrator upon the estate of Amelia upon the technical grounds relied on. If it be true, as stated by counsel for the trustee upon the argument, that she offered, through her counsel, to bear the entire expense of the administration upon the estate of Adeline L. Sprague, and to consent to the appointment of a special administrator to represent that estate in the accounting, we see no reason why the offer should not have been accepted, and thus have avoided litigation. Such a course could have harmed no one, even if her estate was not a necessary party. Under the circumstances, we allow costs to neither party.

The other Justices concurred.