*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELENE CROWLEY,

      Plaintiff-Appellant,

v

MICHIGAN REALTY SOLUTIONS,

      Defendant-Appellee.

UNPUBLISHED
May 7, 2020

No. 341722
Macomb Circuit Court
LC No. 2017-002562-CK

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as on leave granted[1] the trial court's order granting defendant's motion for preliminary injunction. On appeal, plaintiff contends that the trial court lacked both subject matter and personal jurisdiction. Plaintiff also argues that the trial court erred when it granted defendant injunctive relief, and that defendant tortuously interfered with and breached the contract between her and defendant to the detriment of her property rights. Finally, plaintiff challenges this Court's order denying her application for leave to appeal. We affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

## I. BACKGROUND

The instant matter arises out of longstanding efforts to perform repairs to a house plaintiff owns in Shelby Charter Township. Insofar as we can determine from the record in this matter and

---

[1] This Court initially denied plaintiff's application for leave to appeal. *Crowley v Mich Realty Solutions*, unpublished order of the Court of Appeals, entered April 5, 2018 (Docket No. 341722). However, after plaintiff's application for leave to appeal filed with our Supreme Court, in lieu of granting leave to appeal, our Supreme Court remanded the case to this Court "for consideration as on leave granted." *Crowley v Mich Realty Solutions*, 503 Mich 982; 923 NW2d 885 (2019).

in documents submitted to this Court in prior appeals or attempted appeals,[2] plaintiff's house sustained serious damage to its roof, possibly as early as 2011. In 2013, the Township commenced a district court action seeking to compel plaintiff to perform repairs. Plaintiff did not perform any repairs, resulting in the house structure sustaining additional damage, including the development of toxic mold. The district court proceedings culminated in Adult Protective Services seeking, and obtaining, a conservatorship over plaintiff. Plaintiff's home was then finally entered by Township representatives and discovered to be totally uninhabitable and not fully inspectable due to the hoarding present. In April of 2014, the Township provided, posted, and recorded a notice of condemnation, enumerating an extensive list of code violations that rendered the house unsafe. The notice prohibited occupancy of the house, and it required the securement of permits and either demolition or correction of the violations and a re-inspection by June 6, 2014. Later that April, the district court proceedings were dismissed due to the probate court's determination that plaintiff was mentally incapacitated and its appointment of plaintiff's daughter as plaintiff's conservator.

The conservator, however, continued to fail to undertake repairs to the house, and the condition of the house continued to deteriorate. In July of 2014, the Township entered into an agreement with plaintiff's conservatorship estate granting several extended deadlines for the conservator to enter into agreements with licensed contractors and commence repairs. Those deadlines were also not met. On November 3, 2014, the Township commenced proceedings in circuit court against plaintiff, through her conservatorship estate, seeking either the demolition or the proper repair of the house.

Those proceedings apparently proceeded less than smoothly and swiftly. However, on August 19, 2015, plaintiff, through her conservator, entered into a "Rehabilitation Contract" for plaintiff's house, under which defendant was to serve as the general contractor. By that time, the house was in profoundly unlivable condition that, in part, required it to be gutted to its studs to abate the mold. Defendant commenced work on the house and successfully achieved some work, despite plaintiff's alleged interference, efforts to micromanage, actual sabotage, and occasionally successful efforts to persuade her conservator to refuse to make payments. Nevertheless, plaintiff, through her conservator, filed the instant action on July 18, 2017, alleging that defendant had breached the rehabilitation contract by: "(a) stripping the property of items that bring cash and were not part of the contract; (b) failing to perform, work on repairs; and (c) poor workmanship." Defendant asserted counterclaims against plaintiff, to the general effect that plaintiff had first breached the contract, that plaintiff acted in such a way that defendant's performance was rendered essentially impossible, and that defendant had suffered significant damages as a result of plaintiff's interference and nonpayment.

Meanwhile, on August 23, 2017, the Township and plaintiff, through her conservator, entered into a consent judgment, which concluded the 2014 circuit court action, referencing the contract with defendant and the fact that repairs remained incomplete. The consent judgment

---

[2] We may, and due to the convoluted history of the underlying dispute and understandable ensuing limitations of the record in this matter, we choose to take judicial notice of our own records. See, e.g., *Wilkinson v Conaty*, 65 Mich 614, 620; 32 NW 841 (1887); *In re Albert*, 383 Mich 722, 724; 179 NW2d 20 (1970); *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

imposed various duties upon the conservator to ensure the timely completion of work on the house. We note that defendant was not a signatory to that consent judgment, nor was defendant a party to the 2014 circuit court proceedings. Thus, defendant was not strictly bound by the consent judgment. However, the consent judgment expressly permitted Shelby Township to seek a show-cause order "in the event the repairs do not progress in a reasonable fashion." Some work on the house apparently proceeded at that time.

However, in November of 2017, the probate court entered an order terminating plaintiff's conservatorship, which the trial court in the instant proceedings understandably found mysterious. Defendant then sought a preliminary injunction in the instant matter, alleging plaintiff had cut off all communications, repeatedly broken into the house despite the continued presence of toxic mold, displayed a history of interfering with defendant's work and refusing payment, and was directly responsible for the deteriorated condition of the house and delays in performing repairs. Defendant also alleged that Shelby Township had, in fact, sought a show-cause order. Defendant asserted that unless the court issued an injunction, it would be forced to work for free despite the significant sum still owed to it for work already performed, and "the current situation will continue indefinitely." It also noted that the only harm that would ensue to plaintiff is that she would get precisely what she ostensibly wanted: "her home back in a safe habitable condition." Defendant asked for "an Order making any and all rulings necessary to make the property safe and to grant all relief necessary to enable Defendant to comply with the court's [show cause] order."

Defendant served its motion for the preliminary injunction on the attorney representing the conservatorship, and it allegedly also sent "courtesy copies" to plaintiff and her conservator personally. No response was apparently filed. The trial court held a hearing on the motion on December 18, 2017. The conservator's attorney appeared and asked to be permitted to withdraw, given that the conservatorship had been dissolved and she had been "fired from the probate matter" without her knowledge. The trial court granted that withdrawal. The trial court also granted, over plaintiff's protest, Shelby Township's request to substitute plaintiff, personally, in place of the conservatorship for purposes of the Township's enforcement proceeding. The trial court also ordered that plaintiff would be substituted for the conservatorship as the party in interest in the instant proceeding. Finally, the trial court ordered the instant matter consolidated with the enforcement proceeding in the 2014 circuit court action.

Regarding the injunction itself, plaintiff objected that she had not been personally served with the motion. The trial court held that (1) the conservator had been properly served, (2) plaintiff had received actual notice in the form of the courtesy copy sent to her, and, in any event, (3) plaintiff was present so it was exercising its discretion to shorten the time for service under the emergency situation before it. The trial court also noted that it had overseen much of plaintiff's conservatorship case, observing:

> You are the person, you are the sole person who's been the cause of all of this delay, except for the fact that [defendant's managing member] had a heart incident for a couple of months.
>
> Prior to that, I sat over all of these cases. You are the one who entered upon the property when you shouldn't have entered on the property. You are the one who refused to cooperate. You were the one who was foot dragging all of the time.

-3-

Again, I excused it because I thought that you were incapacitated and that we were dealing with a person who just did not understand what she was doing. But now the Probate Court tells me you do understand what you're doing. But that still doesn't erase history. That still doesn't make you somehow not the person to blame for all of this delay, except for the two months for the heart attack.

The trial court granted the preliminary injunction on "the basis of a prior order in the 2014 case and on the basis of the order in the 2017 case in which Shelby Township brought this action to finally get this property fixed." It noted that defendant had a "nearly 100-percent probability of success on the merits" and would suffer irreparable harm without the injunction. It noted that the injunction was also in the public interest, and it would not harm plaintiff because she was only paying money that she would need to spend in any event to repair her own property. Plaintiff sought leave to appeal, which this Court denied.[3] Our Supreme Court remanded the matter to this Court "for consideration as on leave granted." *Crowley v Mich Realty Solutions*, 503 Mich 982; 923 NW2d 885 (2019).

## II. ERROR IN DENYING APPLICATION FOR LEAVE

Plaintiff first raises as an issue in her brief that this Court erred in denying her application for leave to appeal. Plaintiff does not present any argument in support of this issue, which constitutes abandonment. *Kalin v Fleming*, 322 Mich App 97, 104 n 3; 910 NW2d 707 (2017). In any event, because our Supreme Court, in lieu of granting leave, remanded the case to this Court for consideration as if leave had been granted, the issue is moot. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief.").

## III. SUBJECT-MATTER JURISDICTION

Plaintiff next argues that the probate court had exclusive jurisdiction over this proceeding because she was under a conservatorship at the time her breach of contract claim was filed. We disagree.

We review de novo the issue of whether the trial court had subject-matter jurisdiction, and we review factual findings for clear error. *Gaudreau v Kelly*, 298 Mich App 148, 151; 826 NW2d 164 (2012). "Issues of statutory interpretation are questions of law that this Court reviews de novo." *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 537; 831 NW2d 255 (2013). "In the absence of ambiguities, judicial construction is neither necessary nor permitted." *Id*. (quotation omitted). "If the statute's language is clear and unambiguous, then [this Court] assume[s] that the Legislature intended its plain meaning and the statute is enforced as written." *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004) (quotation marks and citation omitted).

"Subject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of a case." *Harris v*

---

[3] *Crowley v Mich Realty Solutions*, unpublished orders of the Court of Appeals, entered April 5, 2018, and May 16, 2018 (Docket No. 341722).

-4-

*Vernier*, 242 Mich App 306, 319; 617 NW2d 764 (2000). "The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry." *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). In other words, "courts are to determine their subject-matter jurisdiction by reference to the pleadings." *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 217; 884 NW2d 238 (2016).

"Circuit courts are courts of general jurisdiction, and have original jurisdiction over all civil claims and remedies 'except where exclusive jurisdiction is given by the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' " *Farmers Ins Exch v South Lyon Community Sch*, 237 Mich App 235, 241; 602 NW2d 588 (1999), quoting MCL 600.605. On the other hand, "[p]robate courts are courts of limited jurisdiction," where such jurisdiction is defined "entirely by statute." *In re Geror*, 286 Mich App 132, 133; 779 NW2d 316 (2009) (quotation marks and citations omitted).

Relevant to this case, the probate courts have exclusive jurisdiction over "a proceeding that concerns a guardianship, conservatorship, or protective proceeding." MCL 700.1302(c). Probate courts and circuit courts have concurrent "jurisdiction to '[h]ear and decide a contract proceeding or action by or against an estate, trust, or ward.' " *In re Estate of Shields*, 254 Mich App 367, 369; 656 NW2d 853 (2002), quoting MCL 700.1303(1)(i). Where two courts have concurrent jurisdiction, "a plaintiff may properly file its case in either" court. *Wayne Co Chief Executive v Governor*, 230 Mich App 258, 270; 583 NW2d 512 (1998).

The complaint brought by plaintiff's conservator alleged that defendant "breached the contract by: (a) stripping the property of items that bring cash and were not part of the contract; (b) failing to perform, work on repairs; and (c) poor workmanship." Thus, the substance of the complaint is one for breach of contract. The nature of the proceeding, therefore, was a "contract proceeding or action by or against an estate, trust, or ward." MCL 700.1303(1)(i). As a result, the circuit court and probate court had concurrent jurisdiction to adjudicate the case. *Id.*, see also *In re Estate of Shields*, 254 Mich App at 369. Moreover, because there were already proceedings ongoing in the circuit court with respect to Shelby Township's related enforcement action, judicial economy was served by hearing this case in circuit court. See *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 259-260; 739 NW2d 121 (2007), quoting MCR 8.111 ("[I]f one of two or more actions arising out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to that judge . . . "). We therefore conclude that the circuit court properly exercised subject-matter jurisdiction over the case.

## IV. PERSONAL JURISDICTION

Plaintiff also challenges the circuit court's exercise of personal jurisdiction over her, arguing that she was never served with the summons and complaint filed by her conservator. Although we conclude that plaintiff waived this issue by not raising it below, we also disagree with the premise of plaintiff's argument that *defendant* was somehow required to serve *plaintiff* with her own complaint.

To preserve a challenge to the trial court's exercise of personal jurisdiction, the issue must be raised in a party's first responsive pleading or motion under MCR 2.116, or it is deemed waived.

-5-

*Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015); MCR 2.116(D)(1). Plaintiff's attorney filed an answer to defendant's counterclaim in the trial court, and did not raise the issue of personal jurisdiction. Thus, plaintiff has waived the issue on appeal. *Teran*, 313 Mich App at 208. In any event, plaintiff fails to recognize that under MCL 700.5431, when a conservatorship is terminated, "title to the estate property passes to the formerly protected individual . . . " Thus, when plaintiff sought and obtained termination of the conservatorship, she became, as a matter of law, the proper plaintiff in the lawsuit at issue here. Insofar as we are aware, plaintiff has not appealed the probate court's order terminating the conservatorship, and defendant had no obligation to serve plaintiff with her own summons and complaint. If plaintiff believes she was wronged because her conservator did not apprise her of the instant proceedings before plaintiff obtained a termination of the conservatorship, that issue is between her and the conservator; it is of no relevance here.

## V. ISSUANCE OF PRELIMINARY INJUNCTION

We also reject plaintiff's contention on appeal that the trial court abused its discretion when it granted defendant's motion for preliminary injunction.

"This Court reviews a trial court's decision to issue a preliminary injunction for an abuse of discretion." *Oshtemo Charter Twp v Kalamazoo Co Rd Comm*, 288 Mich App 296, 302; 792 NW2d 401 (2010). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). In addition, a "trial court's findings of fact are reviewed for clear error." *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 717-718.

The decision whether to grant a preliminary injunction requires consideration of the following four factors:

> (1) harm to the public interest if the injunction issues; (2) whether harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if relief is granted; (3) the likelihood that the applicant will prevail on the merits; and (4) a demonstration that the applicant will suffer irreparable injury if the relief is not granted. [*Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998).]

Beginning with the first factor—the harm to the public interest if the injunction is granted—the trial court did not abuse its discretion when it found that, rather than being harmed, the public interest would be served by the issuance of an injunction. The trial court noted that plaintiff's house was not only an eyesore that was a blight on the neighborhood, it also posed a danger to the health of anyone who entered the structure given the proliferation of toxic mold. We find no abuse of discretion in this finding. See *Dep't of Environmental Quality v Worth Twp*, 491 Mich 227, 250-251; 814 NW2d 646 (2012) (concluding that trial court properly issued injunction against defendant to prevent raw sewage discharges in order to protect public health and safety).

As to the second and fourth factors—the balancing of harms between the parties and the likelihood of irreparable harm—the trial court did not abuse its discretion when it concluded that defendant would suffer irreparable harm in the absence of injunctive relief while plaintiff would not. The consent judgment required that the repairs to plaintiff's house occur expeditiously. The trial court found, however, that plaintiff was not paying defendant's invoices. Thus, if defendant were to comply with timelines set forth in the consent judgment, defendant would be forced to work for plaintiff for free. We take no issue with the trial court's conclusion that such an arrangement would cause defendant irreparable harm, especially given the money already due to defendant.

Although the injunctive order prohibited plaintiff from entering the property while the work was being done and did not give plaintiff discretion over construction choices, any harm to plaintiff as a result was outweighed by the potential harm to defendant if the trial court failed to order relief. The trial court found as a matter of fact, which we do not disturb on appeal, that plaintiff was the cause of the delays in construction and would not be permitted to further delay the completion. Based on its familiarity with plaintiff's case in the probate proceedings, it believed that plaintiff subjectively believed that she wanted the project completed, but she had a serious psychological impediment that precluded her from making decisions. It concluded that if she was permitted any control, "this would be a never ending project" and "[t]en years from now we would still be litigating every minor issue that could come up." The evidence appears to support the trial court's conclusions, and in any event, we defer to its superior ability to observe the parties. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *Anderson v City of Bessemer City, NC*, 470 US 564, 574-575; 105 S Ct 1504, 1511-1512; 84 L Ed 2d 518 (1985). Thus, the injunction essentially serves to protect plaintiff from herself.[4] Plaintiff was the beneficiary of the work being done by defendant, who was hired to repair her house which had fallen to such a state of disrepair it had been condemned by Shelby Township. If plaintiff believed, after the repairs were completed, that defendant was ultimately overpaid, plaintiff had remedies at law to recover.

Finally, we find no abuse of discretion in the trial court's conclusion that defendant was all but certain to prevail on the merits, given the prior existing orders of the court. In the enforcement action brought by Shelby Township, plaintiff was obligated under the consent judgment to repair and replace the interior and exterior of her house. In addition, plaintiff was prohibited from "allow[ing] any unsafe, hazardous and/or nuisance conditions to exist . . . " Thus, given these existing orders, the trial court did not abuse its discretion when it concluded that defendant was likely to prevail on the merits.

Plaintiff also raises a mystifying argument that she is not responsible for defendant's attorney fees related to plaintiff's "motion for reconsideration." Plaintiff does not clarify which motion for reconsideration to which she is referring, leaving this Court only to guess. In addition,

---

[4] Plaintiff contends that she needs to be able to access her property and personally oversee the project. Plaintiff's behavior has already been directly responsible for keeping her house uninhabitable for approximately seven years. The record overwhelmingly supports the trial court's implicit conclusion that any further involvement by plaintiff is exactly what must *not* be permitted to happen if there is to be any hope of plaintiff's house ever becoming habitable.

plaintiff fails to support the argument with any legal authority as to why the imposition of those fees was an abuse of discretion. We will neither attempt to guess at plaintiff's argument nor search for authority to sustain her argument, if we could even understand it, on her behalf. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *In re Temple Marital Trust*, 278 Mich App 122, 139; 748 NW2d 265 (2008). This argument is abandoned.

In sum, we conclude that it was not an abuse of discretion for the trial court to issue injunctive relief in defendant's favor.

## VI. TORTIOUS INTERFERENCE

Plaintiff's final argument on appeal is that defendant tortiously interfered with the contract between plaintiff and defendant, and breached that contract, to the detriment of plaintiff's property rights. To the extent we understand plaintiff's argument, we disagree.

Initially, plaintiff failed to preserve any argument regarding tortious interference. To preserve an issue for appeal, a party generally must first attempt to obtain the trial court's consideration of the issue. *Peterman v Dep't of Natural Resources*, 466 Mich 177, 183; 521 NW2d 499 (1994). A party generally has no right to have an appellate court consider an issue for the first time on appeal. *Id*.; *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Nevertheless, for the sake of completeness and in the interests of expediting the conclusion of this matter, we choose to exercise our discretion to entertain this issue. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v Atrium Home and Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005). "To maintain a cause of action for tortious interference, the plaintiffs must establish that the defendant was a 'third party' to the contract or business relationship." *Reed v Metro Girl Scout Council*, 201 Mich App 10, 13; 506 NW2d 231 (1993). Plaintiff has never alleged, nor can we imagine how such an allegation could be made, that defendant was somehow a third party to its own contract with plaintiff. Thus, plaintiff cannot maintain any claim of error, let alone plain error, under a theory of tortious interference. In addition, a party cannot maintain a suit under a tort theory based on a contract, unless there is "some breach of duty distinct from a breach of contract . . ." *Farm Bureau Ins v Abalos*, 277 Mich App 41, 44; 742 NW2d 624 (2007). The gravamen of plaintiff's complaint is for breach of contract, and nowhere did she plead that defendant owed her a duty apart from the contract. See *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229; 859 NW2d 723 (2014) ("[u]nder Michigan jurisprudence . . . a court is not bound by the label a party assigns to its claims. Rather, we must consider 'the gravamen' of the suit based on a reading of the complaint as a whole").

Plaintiff did, however, allege a breach-of-contract claim against defendant. Plaintiff has not appealed any ruling with respect to that claim. We therefore find no error.

Affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel