In re CLOWARD'S ESTATE.
In re SEARLE'S ESTATE.
BEAN v. CLOWARD.

No. 5968. Decided September 3, 1938. (82 P. 2d 336.)

454

T. A. *Hunt,* of Richfield, for appellant.

N. J. *Bates,* of Richfield, for respondent.

LARSON, Justice.

This is an appeal from an order of the District Court of Sevier County, sitting in probate, revoking letters of administration on the Estate of Thomas H. Cloward, Deceased, theretofore issued to the appellant Bean, and from an order

disallowing in toto his accounts as administrator. The facts as far as pertinent to the matters before us follow: Thomas H. Cloward, a resident of Sevier County, died in May, 1923, leaving surviving him a widow, Amanda, and several minor children. His estate consisted of property in said county. In September of that year letters of administration of the estate were issued to the widow, Amanda Cloward, who qualified, caused notice to creditors of the estate to present their claims to be published as required by law, and filed an inventory and appraisement of the property, showing the estate to be valued at $1,400. Nothing further was done in the probate proceeding, but the widow and minor children occupied the property as a home. Sometime later, Amanda Cloward married Allen Searle, by whom she had one child, a son, still living. She died in Sevier County in August, 1935, leaving surviving her as heirs at law her second husband, Allen Searle, one son by her second husband, and five children by her first husband, Thomas H. Cloward. Three of said heirs were minors. In November following her death, G. T. Bean, appellant, filed in the District Court of Sevier County his petition asking that letters of administration of the estates of Thomas H. Cloward and Amanda Cloward Searle be issued to him on said estates jointly, and that said estates be administered upon together. Bean alleged that Amanda Cloward Searle was indebted to him on a personal obligation incurred since her marriage to Mr. Searle and that he was therefore a creditor of her estate. He made no claim of any interest as an heir, creditor, or otherwise in the estate of Thomas H. Cloward. In April, 1936, an order was entered in conformity with the prayer of his petition. Bean subscribed an oath, filed a bond, and entered upon the administration of both estates, jointly.

In March, 1937, Charles H. Cloward, a son of Thomas H. Cloward and Amanda Cloward (Searle), filed a petition to revoke the letters of administration issued to appellant Bean and appoint petitioner as administrator of the estate of Thomas H. Cloward. He attacked the letters issued to Bean

as void upon two grounds hereinafter set forth. Bean filed an account and joined issue on the petition to revoke his letters. Upon hearing, the court revoked the letters of administration as to the estate of Thomas H. Cloward issued to Bean as void and disallowed in full all his claims and expenditures. He appeals and presents three questions: (1) Were the estates of Thomas H. Cloward and of Amanda Cloward Searle subject to administration jointly under the provisions of Sec. 102-4-6, R. S. Utah 1933? (2) On the petition of Bean and the record as made, did the court have power and authority to appoint Bean, a stranger, as administrator of the estate of Thomas H. Cloward, deceased? (3) Was the ruling of the court disallowing the account of Bean erroneous? We shall consider them seriatim.

(1) The statute, Sec. 102-4-6, R. S. 1933, reads as follows:

"In all cases where the estate left by a deceased person had descended from another deceased person whose estate has never been probated, or where two or more deceased persons held property during their lifetime as tenants in common, and neither estate has been probated, and where the heirs are the same, the court may grant letters of administration upon such estates jointly, and they may be administered the same as if they were but one estate."

This section seems to be original in this State and such research as has been made has not revealed it in the laws of any other state, and, so far as we can find, its provisions have never been construed. A number of questions as to the meaning and interpretation of the section suggest themselves, of which we note a few: (a) Does the clause "Where the heirs are the same" apply to the case when the estate of a deceased person descended from another deceased person as well as to a case where the estates of deceased persons had been held by tenants in common during their lifetime? (b) Does the first clause of the section require that the entire estate of the second deceased person shall have descended from another deceased person? (c) Does the clause "where the heirs are the same" permit the joint administration of two

estates without one or the other of the two prior conditions? (d) Does the clause "whose estate has never been probated" refer to cases where administration had not been commenced or does it include cases where administration in at least one estate has been commenced but not completed? It is not necessary in this case to answer or discuss questions listed as (a), (b) and (c), and they are suggested only for the reason that having them in mind may help to understand what may be said in regard to question (d).

It is unnecessary to discuss question (a) because in this case there is a distinct diversity of heirship. As to (b), the record discloses that the entire estate of Amanda Cloward Searle, as shown by appellant's petition, consists of an interest in the estate of Thomas H. Cloward. It is therefore unnecessary to discuss the question as to whether the statute could apply were there other property in Amanda Searle's estate. And for the same reason question (c) is not before us in this instance. This brings us to a consideration of question (d).

The statute specifies that the estate from which the other estate descends shall have "never been probated." Does that mean "administration has never commenced" or that "administration has not been completed"? We think it means the former. Coupling the administration of a new estate with one partially administered may in some cases necessitate the removal of an administrator already functioning, or it may place as administrator in one estate a person without statutory right to administer in the other estate. It often would result in a renewed giving of notice to creditors in the first estate after time for presenting claims had passed, and might call for a re-appraisal and other duplications of work and expense. We mention these as a few of many practical objections to a construction other than we have given. The law governing wills and the administration of estates of deceased persons is statutory. The court, sitting in probate, derives its power from the statutes and has only such powers as are granted by statute

or reasonably implied or reasonably necessary and proper to effectuate the powers which are given. Provisions of the probate code should be construed in harmony with the general purpose, intent and provisions of the code as a whole. The word "probate" or "probated" is not found in the provisions of the probate code referring to the administration of estates, commencing with Chapter 4 of Title 102, Sec. 102-4-1, to the end of the Title (Probate Code), Sec. 102-14-25, except in the one section now under discussion. On the other hand, the word "probate" or "probated" is found numerous times (at least 12) in Chapter 3 of the Title, Secs. 102-3-1 to 102-3-27, referring to Wills. This chapter is entitled "Probate of Wills," and provides in ten different sections for the probating or proving of a will, i. e., admitting it to probate; that after a will has been probated letters testamentary shall issue; that after a will has been "probated" a petition may be filed to revoke the probate of the will; and that "a copy of a will and the probate thereof, duly authenticated," shall be proof thereof in any ancillary proceedings; and that after a will has been "probated" if the executor fails to qualify, resigns, or dies, an administrator with the will annexed may be appointed. It is evident that wherever the legislature has used the term "probate" or "probated" it means the proving under a properly drawn petition of the facts necessary to vest the court with jurisdiction to proceed with the administration of the estate, the establishment of the death of the decedent, his residence, the existence of an estate and all other facts necessary and proper to call into existence and exercise the functions and powers of the court to seize upon, control and administer the estate for the protection of creditors and the devolvement of the property upon the proper heirs, legatees, devisees, and others entitled to receive or enjoy the property or the usufruct thereof. When this has been done and the estate properly brought within the grasp and control of the court to be handled according to the rules of law relative to administration, the estate has been probated, that is,

brought within the functions and powers of the probate court. We see no reason for holding that the legislature in the one instance used the word "probated" in any different sense or meaning than it did in all the other instances where it used the word in the probate code. While we find no case construing a statute like this one, the following cases may be helpful: *Decker* v. *Fahrenholtz,* 107 Md. 515, 68 A. 1048, 72 A. 339; *Shevalier* v. *State,* 85 Neb. 366, 123 N. W. 424, 19 Ann. Cas. 361; *Schofield* v. *Thomas,* 231 Ill. 114, 83 N. E. 121; *In re Pforr's Estate,* 144 Cal. 121, 77 P. 825; *Dibble* v. *Winter,* 247 Ill. 243, 93 N. E. 145; *In re Mortenson's Estate,* 248 Ill. 520, 94 N. E. 120, 21 Ann. Cas. 251; *In re Miller's Estate,* 216 Pa. 247, 65 A. 681; *Lamb's Estate* v. *Hall,* 122 Mich. 239, 80 N. W. 1081; *McCay* v. *Clayton,* 119 Pa. 133, 12 A. 860; *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382; *Reno* v. *McCully,* 65 Iowa 629, 22 N. W. 902.

It follows that the estate of Thomas H. Cloward had been probated prior to Bean's petition for joint administration of the two estates and could not therefore ■ be jointly probated with the estate of Amanda Cloward Searle.

We now come to a consideration of our second question: On the petition of Bean and the record as made, did the court have power and authority to appoint a stranger as administrator of the estate of Thomas H. Cloward, deceased? This involves the construction and interpretation of Secs. 102-4-1, 102-4-2, and 102-4-3, R. S. Utah 1933, which read as follows:

102-4-1: "Administration of the estate of a person dying intestate *must be granted to some one or more of the persons hereinafter mentioned,* the relatives of the deceased being entitled to administer only when they are entitled to succeed to his personal estate or some portion thereof; and they are, respectively, entitled thereto in the following order:

"(1) The surviving husband or wife.
"(2) The children.
"(3) The father or mother.

"(4) The brothers or sisters.
"(5) The grandchildren.
"(6) The next of kin.

*"Administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled filed in the court."*

102-4-2: "When there are several persons equally entitled to administration, the court may grant letters to one or more of them. Of several persons claiming and equally entitled to administer, relatives of the whole blood *must be preferred* to those of the half blood. *If none of the relatives entitled* or their guardians *will accept, then the creditors shall be entitled to letters, but when a creditor is applying, the court may, in its discretion, at the request of another creditor, grant letters to any other person legally competent. If a dispute arises as to relationship between applicants, or if there is any other good and sufficient reason, the court may appoint any competent person."*

102-4-3: "Letters of administration must be granted to *any interested applicant*, though it appears that there are other persons having better rights to the administration, *when such persons fail to appear* within three months after the death of the decedent and claim the issuance of letters to themselves." (Italics added.)

The first section entitled, "Letters of Administration. To Whom Granted," clearly indicates the purpose of the law to keep administration within those beneficially interested in the estate. It provides: (a) Letters must be granted to the persons therein mentioned (strangers to the estate are not mentioned). (b) Even the mentioned groups can administer only when they are entitled to succeed to personal estate. (c) The right to administer is such a valuable one that the person with preferential right may in writing designate who shall act if he does not choose to act personally. (d) Any person not enumerated in the section may be appointed only when the person enumerated and entitled to letters shall designate him in a writing filed in the court.

The next section, 102-4-2, is in the nature of a limiting or qualifying section to 102-4-1. It deals with the duty of the court in determining who shall receive letters in view of

the restrictions indicated in Sec. 102-4-1. It provides: (e)
The court may appoint more than one of the group
enumerated in the preceding section, provided they
are of the same group, i. e., equally entitled; but (f)
relatives of the half blood are not equally entitled with rela-
tives of the whole blood, and therefore cannot act if the
relative of whole blood will act; (g) if one of those who can
be appointed (enumerated in the first section), is under
guardianship because of minority, or other reason, such
guardian has all the rights of his ward for administration;
(h) in the event *only* that none of the enumerated classes,
or their guardian, is willing to act, may a creditor be en-
titled to letters; (i) in the event only that none of the per-
sons inheriting from the estate nor the guardian of such is
willing to act, and have not designated in writing their
nominee, and in the further event that there is a dispute
between creditors as to the appointment, then and in those
events only may the court grant letters to any other person
legally competent. This brings us to the last sentence of the
section, which we note in a moment. Down to this point
then, it is evident that the right to letters is reserved to per-
sons beneficially interested in the estate, that is, entitled
to inherit, or their nominee in writing, qualified only by the
fact that if there are creditors of the estate and none of
the heirs are willing to act, a creditor may be appointed. His
right being so limited, methinks it would be necessary for
a creditor to plead and prove that none of the heirs are
willing to act and have filed no written designation of nomi-
nee in the court. Under the terms of the statute, as quoted
down to this point, it is only in the event of a dispute be-
tween creditors that the court can appoint as administrator
a stranger, that is, a person entitled to receive nothing from
the estate except his fees and commissions. The reason for
this we will note later.

We now take note of the closing sentence of the section
last considered, 102-4-2. That sentence reads: "If a dispute
arises as to relationship between applicants, *or if there*

*is any other good and sufficient reason,* the court may appoint any competent person." Appellant relies upon the italicized clause as sufficient authority for the appointment of Bean. This whole section is in the nature of a procedural section, designating the only conditions under which the court may depart or vary from the provisions of the preceding section. To take a clause out of the middle of a sentence, which itself is an exception conditioned on an *"if"*, and is part of a section of specific detailed exceptions, and construe it as a general grant of power and wide discretion to the court, in a matter which is in the nature of a special proceeding, strictly statutory, goes beyond any sound, approved or recognized rule of statutory construction. The section is treating of the limited conditions under which the court may depart from appointment of those entitled to inherit. The sentence then states that where there are applicants for appointment who are relatives of the deceased, and therefore within the provision of the preceding section and eligible for appointment, and between such applicants a dispute arises as to relationship and priority or right to appointment (the court need not try and determine such question of heirship in advance), or if there is other good and sufficient reason why the applicant, or in the event of a contest neither of the contesting applicants, who are apparently among the eligible classes and therefore entitled to administer, should be appointed, the court may appoint any competent person. Administration having been sought by those entitled to have the estate administered, but for sufficient reasons their appointment not being proper, the court may grant letters of administration to another, so that the parties entitled to have the estate administered and who are asking to have it administered may receive their beneficial interest or the payment of their debt, and may obtain that which is theirs. But a stranger to the estate who is not a creditor and has no interest in the property of the estate on distribution, who can receive nothing from it except fees and commissions as an adminis-

trator or attorney, has and should have no right to subject the property to debts and expenses, or to disturb the use or occupancy of the property and change its title or ownership. Such construction is in harmony with the sentence, with the section, with the chapter, and with the purpose, reasons, and underlying philosophy of probate jurisdiction and procedure.

The writer is aware that this reasoning appears at first blush to be at variance with the holding in *Re Owens' Estate,* 30 Utah 351, 85 P. 277, and one or two other cases following it. However, a careful reading of the opinions in those cases discloses that the court did not construe these sections, and the holdings are not in conflict with what is here said. If in the Owens' Case the opinion is at variance with what is here said, then the question should be re-examined, but we need not be concerned with what was said in that case because the legislature has re-examined the question for us and has definitely settled the question. At the time of the decision in all prior cases, we had a statute which read:

"Letters of administration must be granted to *any applicant,* though it appears that there are other persons having better rights to the administration, when such persons fail to appear within three months after the death of the decedent and claim the issuance of letters to themselves." Rev. St. 1898, § 3814. (Italics added.)

The italicized language in that section was specifically referred to in the Owens' Case and made the basis of what was there said about disinterested persons in administration. So, too, it forms the basis of the opinion in *Re Slater's Estate,* 55 Utah 252, 184 P. 1017. The rule or interpretation of the Owens' Case was again followed by this court in *Re Pingree's Estate,* 74 Utah 384, 279 P. 901. Shortly thereafter the legislature amended the section to conform to what the writer thinks the intent of the Probate Code to be, construed as a whole, by making a specific amendment to the section so as to render inoperative further, the reasoning of the Owens' Case by limiting the provisions of the

section under which the Owens' Case was decided to interested parties only. It was amended to read:

"Letters of administration must be granted to any *interested* applicant, though it appears that there are other persons having better rights to the administration, when such persons fail to appear within three months after the death of the decedent and claim the issuance of letters to themselves." (Italics added.) Sec. 102-4-3, R. S. 1933.

In view of what had been the construction previously placed upon the section, there is no sound or reasonable escape from the conclusion that the legislature meant to limit the right to seek administration to "interested parties." Note further that the section provides that even an "interested applicant" cannot have letters issue until all persons having a better right have allowed three months to elapse. The "interested applicant" cannot receive letters and therefore has no right to seek administration until all those with better rights have indicated by a three-months' lapse of time that they do not desire letters.

This is sound reasoning and under the authorities is the rule in harmony with the basic philosophy and purpose of the Probate Code and proceedings. The property of a decedent passes to the heirs (in whom the title vests at the death of the prior owner), subject only to administration. Even the right of possession of real property vests in the heirs during administration. This is because no one else has any interest in the property unless the right of the creditor to be paid may be said figuratively to be an interest, a right to receive part of it in satisfaction of his claim. If the heirs of decedent, not the owners of the property, are content to let it remain in common or undivided ownership, and agree among themselves for care and use, what right should a stranger have to interfere? If there is only a spouse surviving, or minor children, or both, or disabled heirs who may need the possession and usufruct of the property, and the other heirs, if any, prefer that they should have it, why should a stranger be permitted to meddle in the stew and decree otherwise? If a creditor within the

three-months' period, or a stranger at any time, could invoke the power of the court to appoint an administrator, then this provision would be but useless verbiage having no effect. Further reasons were cogently stated in the Owens' Estate Case, supra, wherein it is said (page 278):

"Familiar rules forbid a construction which will render meaningless and ineffective, words, phrases, or clauses in an enactment, when some other reasonable interpretation will render them effective and declare the legislative intent. It is only when none of those entitled will accept the appointment, or when no one of them appears within three months of the death of the decedent that the court is empowered to appoint a creditor either on his own petition, or at the request of another creditor. One of the principal reasons for thus preferring relatives and next of kin, doubtless, is that they, being entitled to succeed to what remains of the estate, after the discharge of the debts and obligations, are the most deeply interested in a proper administration of it, and in preserving it. The policy of thus preferring relatives and next of kin, over creditors, in the order in which their interests naturally appear, seems to be suggested alike by sound reason and justice. The creditor is interested only to the extent of having his claim paid, and, when that is done, his interest in the estate ceases, while the interest of one, who is entitled to all or a portion of the residue, continues until final distribution. For the latter, therefore, there is the greater inducement to conduct a wise and economical administration, and the former's interest can be just as well subserved as when a creditor is appointed. For the benefit of the creditor, as well as others interested in the estate, the law makes ample provision for prompt action, since it limits the time of preference, the clear intent and meaning of the statute being that those who are primarily entitled to administration must appear and assert their right, as provided by law, within three months after the death of the intestate. Until the expiration of that period, no creditor, in the absence of a renunciation of the right to administer by all of those preferred, is authorized to apply for appointment as administrator.

"The Legislature having thus, for cogent and wise reasons, preferred relatives and next of kin by provisions of statute, which are clearly mandatory and binding upon the courts, is not the fact of such preference indicative of the legislative intent * * *? * * * The controlling object of the statute evidently is to secure to those, who have an interest in the residue of the estate, the right to administer. If, then, such persons, because of residence beyond the seas, or of minority, or other cause, cannot themselves administer, it is wholly within

the spirit and policy of the law, and, therefore, the duty of the courts, to recognize those, whom such persons select and in whom they have special confidence, when their fitness for the position is unquestioned. The word 'may,' in subdivision 6 of section 3812, and in subdivision 2 of 3815, was not employed to vest mere discretion, but to confer a power upon the court to be exercised whenever the conditions or contingencies, indicated by the statute, should exist or arise, and when upon the occasion arising for the exercise of that power, the court fails to exercise it, but instead appoints some one not within the contemplation of the statute, it fails to comply with the law and its action is erroneous. * * *

"The respondent applied for letters of administration not only before the expiration of the time limited, by the statute, for relatives and next of kin to apply, but he was not a creditor of the estate within his individual capacity, and, hence, not a creditor within the meaning of the statute. Nor was he of kin; nor had he any personal interest in the estate. He, therefore, had no right to be appointed as administrator of the estate."

In Bancroft's Probate Practice, Vol. 1, Sec. 248, the rule is stated as follows:

"Rights of Disinterested Strangers. There appears to be some doubt under the authorities as to whether a person who is neither relative nor creditor of the deceased has any 'right' whatsoever to apply for letters of administration, even although no one in better right has applied. The Idaho court has held that a person who has no interest whatsoever in the estate has no standing to apply for letters of administration except when nominated by someone in interest. An attempted application by such a person amounts to nothing, and the probate court, it is said, is limited in its power."

The Idaho statute was more general than ours. It was even broader than ours before the amendment of 1933, reading, "any person legally competent" as the last group entitled to administer the estate. Our statute in the similar section, 102-4-1, R. S. 1933, limits such persons to those nominated in writing by a person otherwise entitled to letters. Yet the Idaho court held that a petition for the appointment of a stranger not upon the request of an heir or creditor conferred no rights on the court to act and make such appointment. *McCormick* v. *Brownell*, 25 Idaho 11,

136 P. 613. And a further provision of our statute quoted above expressly requires that it be an *"interested person."* We quote further from Bancroft, same section:

"In most states the statutes do not expressly impose any limitations requiring that the petitioner for letters be interested or nominated by one in interest. They are undoubtedly defective in this regard. It is outrageous to suppose that the expense and inconvenience of an administration can be imposed upon those in interest by any interloper coveting the fees. For this reason the rule announced by the Idaho court is eminently just. And it is true that the statutes vaguely imply that persons not in interest must be nominated by someone in interest when, as is commonly the case, they recite that 'administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled, filed in the court.' "

To like effect is Borland on Wills and Administration, p. 501. See, also, Woerner's American Law of Administration, Vol. II, p. 795, ff; *Pullis* v. *Pullis*, 127 Mo. App. 294, 105 S. W. 275.

So, in Illinois, it is held that before an estate can be committed to the public administrator, it must affirmatively appear that there is no relative or creditor in the state, and that the application was made by a party in interest. Otherwise, the proceeding will be coram non judice, and void. *Langworthy, Unknown Heirs of,* v. *Baker*, 23 Ill. 484. And a grant of letters based on a petition, omitting the averment of a jurisdictional fact, and no evidence thereof being heard, may be avoided in a collateral attack, where it is shown that such fact did not exist. *Coe Brass Mfg. Co.* v. *Savlik*, 2 Cir., 93 F. 519. In Nebraska the petition for the appointment must allege the vital points conferring jurisdiction or the proceeding will be void. *Moore's Estate* v. *Moore*, 33 Neb. 509, 50 N. W. 443. Subsequently, after an amendment of the statute to authorize the court to appoint any applicant (not interested applicant) if no interested party applied within thirty days, the court. held that the appointment of a party not interested could not be collater-

ally attacked. *Larson* v. *Union Pacific R. Co.*, 70 Neb. 261, 97 N. W. 313. Yet the same court held in *Re Estate of Pollard*, 105 Neb. 432, 181 N. W. 133, that even in the light of the Larson Case, a stranger to the estate has no right of appeal from a court ruling adverse to him. In Michigan it was held that the appointment of an administrator is void, unless the record shows all jurisdictional facts, including the interest of the applicant. *Shipman* v. *Butterfield*, 47 Mich. 487, 11 N. W. 283; *Haug* v. *Primeau*, 98 Mich. 91, 57 N. W. 25; *Besancon* v. *Brownson*, 39 Mich. 388, 392. In that state the jurisdictional facts which the petition must allege are that the person whose estate is to be administered died intestate, and was at the time of his death either an inhabitant or resident of the county in which the applicant is made, or, if he died out of the state, that he left an estate in the county to be administered. If these facts appear, the court has jurisdiction to appoint an administrator upon the petition of a party interested. *Wilkinson* v. *Conaty*, 65 Mich. 614, 621, 32 N. W. 841.

On the same principle, one showing no interest cannot petition for letters. *Diem* v. *Drogmiller*, 158 Mich. 380, 122 N. W. 637. And cannot object to an appointment. Succession of Berfuse, 34 La. Ann. 599; *Drexel* v. *Berney*, 1 Dem. Sur., N. Y., 163. If the applicant *claims* to be a creditor, only a prima facie showing is required, but if the proof of this fails the petition should be dismissed. *In re Mumford's Estate*, 173 Cal. 511, 160 P. 667. In *Storrs* v. *St. Luke's Hospital*, 180 Ill. 368, 54 N. E. 185, 72 Am. St. Rep. 211, the Supreme Court of Illinois says (page 186) :

"In construing the statute, we have also held that the words, 'any person interested,' as used in the proviso to said section 7, mean those persons who are interested in the settlement of the estate,—that is to say, those who will be directly affected in a pecuniary sense by its settlement; that the interest must be a direct pecuniary interest affected by the probate of the will, as the reference is to an existing interest, and not to an interest which may be subsequently acquired."

This case is cited, quoted and approved in *Halde* v. *Schultz*, 17 S. D. 465, 97 N. W. 369. Woerner in his American Law of Administration states:

"But it is obvious that, in the exercise of the power of appointing administrators, the court is limited to the selection of such persons as are competent under the statute, in the order therein pointed out." Vol. 2, p. 812.

"The rule which is the foundation of the preference accorded by the statutes—i. e., to commit the administration to those who are eventually entitled to the property—is equally binding upon the court, in the exercise of the discretion vested in it in choosing between several individuals placed by the statute in the same class of preference. It follows, from this that the court will rarely or never be called on to decide on questions of the policy of following the lineal or collateral direction of kinship, as would be important at the civil law, or computing the propinquity between the lineal and collateral kindred, as would be necessary at the common law; but, having ascertained to whom the property of the intestate devolves under the statute governing this subject, its discretion is narrowed to the individual or class of individuals so entitled." Woerner, Vol. 2, p. 814.

"And in cases of conflicting claims, the applicant upon whom a majority of the parties in interest agree will generally be preferred, but not, of course, unless the nominee belong to the same class; for the order of preference enacted by statute cannot be changed or ignored to the postponement, of any person included therein."

As to what a petition for letters should contain, we quote from the same work, at page 860:

"But while it may not in all cases be absolutely necessary to support the jurisdictional power of the court by a recital of all the facts, yet it is of the highest importance that a record should be made of all facts and circumstances which call forth the judicial powers of the court. The petition of the applicant for letters affords the most convenient means for proper allegations, so that the finding upon it may constitute an adjudication of all the necessary facts. The averments should include, among other things, first, the death of the person whose estate is to be administered, his place of domicil at the time of his death, and whether he died testate or intestate; next, if he left a will, that it has been admitted to probate, and the name or names of the persons nominated executors; third, if the application be for letters of administration with the will annexed, that no executor has been named, or that all so named have renounced, died, or are incom-

petent to serve, and the circumstances conferring upon the applicant the right to administer the estate; fourth, the names of the widow, husband, next of kin, or heirs; as the case may be; fifth, the nature of the goods, effects, or other estate left by the deceased, and its estimated value; sixth, if the application be for letters of administration generally, the relation or kinship between the deceased and the applicant; seventh, if the application be for letters de bonis non, the death, removal, or resignation of the former executor or administrator, or, if there were several, of all of them, eighth, if the decedent was at the time of his death a non-resident of the county, the existence of property within the county, or other circumstance showing the necessity of administration; and, generally, whatever facts may exist which, under the law of the State and the particular circumstances, may have a bearing upon the jurisdiction of the court to grant letters, the right of the applicant to be appointed, and the amount of the bond to be required, or whether any bond be necessary."

Research has revealed no cases under statutes such as ours that hold that a stranger, not nominated by an interested part or a creditor, can by a petition confer upon a court any power to make an appointment of such stranger or any other person as administrator of an estate. His petition cannot invoke the exercise of probate jurisdiction, and therefore an appointment under such petition is equivalent to an attempted appointment with no petition.

It follows, therefore, that the jurisdiction of the court to appoint an administrator of the estate of Thomas H. Cloward, deceased, was never invoked by the petition of G. T. Bean; the petition was a nothingness; and he obtained no rights to administer under the purported appointment based on such petition. When Bean, under the color of such appointment, assumed to administer the estate, he became as it were an administrator de son tort, chargeable by the estate for his conduct in the administration and entitled to receive from the estate only the expenses he necessarily incurred in preserving the estate and which inured to its benefit. The amounts paid to file his petition, the sums paid to appraisers, and for filing the inventory and publishing notice to creditors were unnecessary

expenses and not for the benefit of the estate. He therefore cannot recover them. So, also, any charges as administrator's commission and attorney's fees for handling the estate are not recoverable. The charge for costs and expenses in prosecuting the suit against Mason should be denied. The garage and granary was always in the hands of the heirs, where it belonged. The charges made for the Salina trip, which was of no value or interest to the estate, are therefore not recoverable by Bean. As an interloper he had no right, authority or interest to prosecute the suit against Mason and expenses incurred therein as attorney for himself could have no effect except the exploitation of the estate. It therefore was properly disallowed. What we have said applies only to appointment of general administrators or administrators de bonis non, and is not intended to refer to appointment of special administrators to preserve an estate pending appointment of a general administrator.

We find no error in the rulings of the court and the judgment is affirmed with costs to respondent.

HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting).

I dissent. I concur in the holding that under Sec. 102-4-6, R. S. 1933, two estates cannot be combined where the probate of one estate has partly proceeded when the attempt is made to combine another with it. I see no occasion for laying down a rule that in the chapter on administration of estates the legislature meant "probate" to be "the proving under a properly drawn petition of the facts necessary to vest the court with jurisdiction to proceed with the administration of the estate." All we need determine in this case is that under Sec. 102-4-6 no joint administration can be had where one estate is already on its road through probate before the other is started. It is unnecessary in this case to give a definition for the words "probate" and "probated" as used in the code relating to intestate estates. I am

by no means prepared at this time to say that an intestate estate is "probated" when the stage of attaching the court's jurisdiction to it has been reached. I think it may be used, and at least in common parlance is at times used, to denote the completion or virtual completion of the administration of an intestate estate. I think it better to define these words only as it becomes necessary to do so in connection with the construction of the statute in which it is used, rather than to lay down a meaning for the whole intestate code.

I must even more vigorously dissent from the holding that the court has no *jurisdiction* to appoint one not interested as an heir or creditor unless such person has been nominated in writing by a person entitled to letters or the proceeding has itself been initiated by such interested party. This construction of the statutes will, as shall be later shown, make it impossible for probate courts to act in certain cases where it was by the code intended they should act, and where it is necessary for them to act.

Sec. 102-1-2 definitely specifies what facts are necessary to give the court jurisdiction, and those facts are the only ones necessary to jurisdiction. The opinion of the court holds that in addition to the facts set out in Sec. 102-1-2, jurisdiction cannot be invoked unless the petition for letters is initiated by one of the parties entitled to succeed to the personal estate of decedent or by some person nominated by such interested person.

The case of *In re Owens' Estate*, 32 Utah 469, 91 P. 283, and others following it reveal that such has heretofore been the law of this State. But the opinion of the court now holds that one more fact must pertain, i. e., that a party entitled to succeed (interested party) must initiate the proceedings or the proceedings must be initiated by some person nominated by such interested party. This idea is derived from the fourth chapter of the Probate Code entitled, "Letters of Administration," and the section (102-4-1) headed with the caption, "To Whom Granted". This chapter deals not with jurisdiction but with the subject of who is entitled to

administer. It gives certain persons the right to administer and enjoins on the court the duty to accord to the person having the right, the letters. But failure to so accord the right to the person entitled when by order of court it is given to another is no more a matter of jurisdiction than any other case where the court fails to recognize a right because of wrong construction or failure to follow the statutory law. At the most, it is error. If the court by the presence of the proper jurisdictional facts has power to proceed with the matter, such failure is error only. In the case of *Atwood* v. *Cox,* 88 Utah 437, 55 P. 2d 377, after laborious research, it was endeavored carefully to draw the line between jurisdiction and error, or more accurately phrased, that error which did not involve jurisdiction and that error by which the court not only erred but by its error wrongly assumed a jurisdiction it did not have. In that case were pointed out the difficulties sometimes attending a determination of what was jurisdictional and what was error committed by the court while exercising its powers. The court's decision in this case again confuses jurisdiction and error. Unfortunately, courts and textbook writers in their anxiety to convey the idea that a court should not have acted as it did use the words "right of the court," "power of the court," "jurisdiction of the court," and such terms as "void" and "null," very loosely. In such cases the question of whether the "should not" consists of a failure to follow the law under judicial power or is a wrong assumption of judicial power is not the question which the author of the opinion is considering. The case of *McCormick* v. *Brownell,* 25 Idaho 11, 136 P. 613, 615, cited by the prevailing opinion, presents an illustration. There the question of jurisdiction was never raised and never apparently in the court's mind. But one phrase, to-wit, "and * * * the probate court is limited in its power," crept in to express the thought that the court is "required to act wholly upon the desire and request of the person who is entitled to the appointment" (page 616). The question was purely one of which of two persons had the

right to appointment. When a case arises which really requires the drawing of a distinction between no power in the court to act and acting erroneously within its power, the text writers and judges become more circumspect about their language.

This opinion cannot be expanded by a detailed analysis of all the excerpts contained in the prevailing opinion, but it can hardly be successfully gainsaid that not a single one of them attempted to draw such distinction. Long passages from Bancroft, from *In re Owens' Estate,* 30 Utah 351, 85 P. 277, and from Woerner are quoted which, while containing the word "jurisdiction" or "judicial powers" plainly show that it was not meant to consider the distinction between jurisdiction and error. The very quotation from *In re Owens' Estate,* supra, plainly reveals that what was being considered was not the lack of power in the court but the failure of the court to exercise the power which it had and which it should have exercised. Part of the excerpt contained in the main opinion reads:

"The word 'may,' in subdivision 6 of section 3812, and in subdivision 2 of 3815, was not employed to vest mere discretion, but to confer a power upon the court to be exercised whenever the conditions or contingencies, indicated by the statute, should exist or arise, and when upon the occasion arising for the exercise of that power, the court fails to exercise it, but instead appoints some one not within the contemplation of the statute, it fails to comply with the law and *its action is erroneous.*" (Italics added.)

If we turn to the excerpt quoted in the opinion from Woerner, Vol. 2, page 860, we find it treats of the allegations which should be contained in a good petition for appointment of an administrator. It does say:

"But while it may not in all cases be absolutely necessary to support the jurisdictional power of the court by a recital of all the facts, yet it is of the highest importance that a record should be made of all facts and circumstances which call forth the judicial powers of the court."

Then it includes among the eight headings of proper allegations the "nature of the goods, effects, or other estate left by the deceased and its estimated value." Would any competent legal mind contend that such allegation was necessary to confer or invoke jurisdiction? It is quite evident that these excerpts cited in support of the court's opinion contain loose statements as to jurisdiction but were never intended to lay down the rule that naming of a wrong party as administrator was beyond the jurisdiction of the court.

A statute which gives certain persons a right to serve in a certain capacity and provides that the court must appoint such persons, does not affect the jurisdiction of the court where that jurisdiction is dependent on other factors entirely. As said in *Re Owens' Estate,* supra, and generally conceded to be the law everywhere, the jurisdiction of the probate court over a decedent's estate; that is, over the res, depends on two factors: (1) Death of the decedent, and (2) residence of the decedent in the territory over which the court has jurisdiction or estate of decedent located therein. It takes nothing more to give jurisdiction of the res. In order to get jurisdiction of parties, it requires proper notice to the world and to parties interested as they may be known according to the modes prescribed by the statutes. The two conditions being present to confer jurisdiction of the res and of interested parties, the court has complete jurisdiction of the estate. We plainly err when we hold that still another element is necessary before the court may proceed, i. e., that someone who has a right to administration must apply or nominate another before the court may proceed. The law grants or confers many rights, and courts which should and "must" recognize these rights continually fail to do so. But that is merely error and does not affect the power of the court. Sec. 102-4-1, R. S. 1933, provides:

"Administration of the estate of a person dying intestate *must* be granted to some one or more of the persons hereinafter mentioned." (Italics added.)

In many cases where the law gives one a right, the court "must" recognize and "must" act in accordance with the statute so as to effectuate the right. But departure by the court from the "must" obligation does not often constitute a departure from jurisdiction so as to constitute the failure to act as he "must" an act or omission which works an excess of jurisdiction or want of judicial power. The conduct of the court is erroneous within, but not in excess of his powers. One illustration suffices: Sec. 104-24-14, R. S. 1933, provides in part:

"(4) When the evidence is concluded the court shall instruct the jury in writing upon the law applicable to the case, and, if it states the evidence in the case, it must inform the jury that they are the exclusive judges of all questions of fact * * *.

"(6) If several defendants, having separate defenses, appear by different counsel, the court must determine their relative order in the evidence and argument."

The word "shall" in the first line has been construed to mean "must" unless the proviso clause (not included in the above quotation) is followed. *Kunz* v. *Nelson*, 94 Utah 185, 76 P. 2d 577, 115 A. L. R. 1322. But if the court fails to instruct orally rather than in writing or fails to determine the relative order in evidence and argument, it does not mean that the court has stepped beyond its jurisdiction, but only that it has committed error. By the same token when the court appoints a stranger in cases otherwise than mentioned in the prevailing opinion, it does not mean that the court has acted outside of its power, but at the most only erroneously. The appointment is at the most not void, but only voidable.

And even the appointment of one not interested as an heir or creditor when not nominated by an heir or creditor or when there is no dispute as to relationship or contest between creditors, is not always erroneous. Sec. 102-4-2 reads in part:

"If a dispute arises as to relationship between applicants, *or* if there is any *other* good and sufficient reason, the court may appoint any competent person." (Italics added.)

The prevailing opinion holds that the words "or if there is any other good and sufficient reason," etc., apply only in case someone entitled under Sec. 102-4-1 *first* applies. Otherwise, the court has no power to appoint any other person for "good and sufficient reason." The opinion states:

"This whole section is in the nature of a procedural section, designating the only conditions under which the court may depart or vary from the provisions of the preceding section. To take a clause out of the middle of a sentence, which itself is an exception conditioned on an 'if', and is part of a section of specific detailed exceptions, and construe it as a general grant of power and wide discretion to the court, in a matter which is in the nature of a special proceeding, strictly statutory, goes beyond any sound, approved or recognized rule of statutory construction."

The construction given by the prevailing opinion to the clause "or if there is any other good and sufficient reason" etc., is not in harmony with either the dictates of good English construction or sound statutory construction. In the first place, language does not become less meaningful because it is contained in the middle of a sentence. The statement that the clause "is itself an exception" begs the question. The question is: Is the clause a general exception to the "must" provision laid down in Sec. 102-4-1, or is it a special exception which is applicable only in case someone entitled to letters first applies. Wherever one section or clause gives the court a right or imposes upon it a duty and another section cuts down the extent of that right or frees it on certain conditions from obligation to perform the duty, we have an exception. So the statement in the above excerpt from the opinion reading, "which itself is an exception" does not advance our case one way or the other. The question still remains: Is the holding that the exception is one which permits the court upon "good and sufficient reasons" to depart from its obligation to appoint one of the class mentioned in Sec. 102-4-1, or is the prevailing opinion correct when it holds that the exception applies only in case someone of that class first seeks administration and then

for good and sufficient reason it appears to the court that his appointment would not be proper? Reasons why the broader construction of the clause is the correct one will be later given. The third reason why apparently the prevailing opinion thinks the construction we seek here to give the clause goes "beyond any sound, approved or recognized rule of statutory construction" is because the clause begins with the word "if." The opinion states that it is an "exception conditioned on an 'if'" One experiences difficulty visualizing any better word to indicate an exception. There could be a synonym such as "provided however" or some other similar phrase, but when one is making an exception it is almost necessary to indicate it with an "if" or some similar word or words. There is nothing fearful in that fact, or anything which in the slightest way aids the contention of the prevailing opinion. But it is further said that it is "a part of a section of specific detailed exceptions." It really is not. The beginning of the section (102-4-2) deals not with exceptions at all but with further priority of right between and among certain of the classes named in the previous section (102-4-1). The only clause in the whole section dealing with exceptions is the one which reads:

"If a dispute arises as to relationship between applicants, or if there is any *other* good and sufficient reason, the court may appoint any competent person."

Indeed, it is difficult to see how the legislature could have otherwise stated it to make it any the more obvious that it intended to give the court the right to appoint one not interested where there was either a doubt as to relationship or there was some other good and sufficient reason for appointing someone other than an heir or creditor or their appointees. The same clause might have been set off by a separate paragraph. If, as it shall later be shown, it will be necessary because of the decision for the legislature to amend the statutes so as to give the court the right to handle estates in some cases where no one entitled applies or

nominates, no better language can be used to accomplish the purpose than is already in the section. The legislature may emphasize it by setting it off as a separate section. In fact under the prevailing opinion it will be compelled to do so. But one may well question the good sense of this court taking a position which will require the legislature to go to the trouble of again granting a power which is already there, but by a strained and unnatural construction against the plain English meaning and sound tenets of statutory construction has been so construed as to make an amendment necessary.

It is well to note carefully the language of this clause. "If a dispute arises as to relationship between applicants, or if there is any *other* good and sufficient reason" etc. There is no warrant for restricting the words "any other good and sufficient reason" to less than their plain import. There is no warrant for reading into the sentence the following italicized words:

"If a dispute arises as to relationship between the applicants, or *some party entitled having applied*, if there is other good and sufficient reasons *for appointing someone outside of the class entitled*, the court may appoint any competent person."

Attempt has been made to analyze critically the grounds on which the prevailing opinion endeavors to defend its statement that to construe the above-quoted clause as we contend for would go "beyond any sound, approved or recognized rule of statutory construction." And in addition we have affirmatively shown that the construction contended for herein is the sound and reasonable one and the one intended by the legislature. Having given reasons why the court has general power to appoint outside of the designated class if there are good and sufficient reasons whether or not someone entitled initiates the procedure, and, moreover, having given reasons why even though the court wrongly appoints a party which it should not appoint such act is erroneous only under the court's power and not an act which

is beyond its jurisdiction, we shall pass on to show some of the consequences of the holding of the prevailing opinion.

In the first place, attention is called to Sec. 102-14-19, R. S. 1933, reading:

"When the judgment or order appointing an executor, administrator or guardian is reversed on appeal, for error and not for want of jurisdiction of the court, all lawful acts in administration upon the estate performed by such executor, administrator or guardian, if he has qualified, are as valid as if such judgment or order were affirmed."

If one not interested was wrongly appointed and such act was without the jurisdiction of the court, under this section, every act he did would be void. If he sold a piece of real estate complying with all the requirements of the statute and there were no objections by any heirs or for that matter with the approval of the heirs, the purchaser would not obtain title. If the holding of the prevailing opinion is sound, a trust company appointed as administrator of an estate on the petition of a brother of the decedent could not administer the estate even though the only two children, sons of decedent, were in the middle of Africa on a long exploration trip, at least past the point where a special administrator could act. And it is pertinent to ask, under the prevailing opinion, whether any act of the special administrator not chosen from the entitled class, in excess of what was needed to preserve the estate would be void because such acts would be performed by one who had no power; the appointment being void as to any duties beyond preservation. And where would the line be drawn between those administrative acts for the purpose of preservation and such as would be beyond that sphere? Such line would have to be drawn on the very logic of the prevailing opinion. If the court has no *power* to appoint one a general administrator not interested until one of a certain class initiates the proceeding, it must follow that under the guise of special administration which can come about without initiation by any of the class named in

Secs. 102-4-1 and 102-4-2, and at any time without notice (102-4-12), there can be no administration with a jurisdictional basis beyond preservation of assets.

The whole scheme of the probate statutes speaks loudly against the proposition that the court has *no power* to appoint a general administrator unless the proceeding is initiated by an interested party (creditors are included in the term "interested party").

Sec. 102-4-11 provides that a special administrator *must* be appointed when no application is made for letters or when an executor or administrator dies or is suspended or removed. Couple with this Sec. 102-4-13 reading:

"In making the appointment of a special administrator the court or judge must give preference to the person entitled to letters testamentary or of administration."

By the same token as is used to arrive at the conclusion that there is no jurisdiction to appoint one not interested as a general administrator except under the conditions specified in the prevailing opinion, there would be no power under Sec. 102-4-13 to appoint as a special administrator one not entitled to letters of general administration. Yet Sec. 102-4-11 makes it obligatory on the court to appoint a special administrator in the very cases where no one is available who is entitled to general letters and that on motion of the court. And in passing it should be noted that in the instant case the administratrix of the estate of Thomas H. Cloward had died. Certainly, under Sec. 102-4-11 it was the court's duty to appoint an administrator de bonis non—special or general. Certainly, if one not interested was appointed a special administrator it would not be void (although the logic of the prevailing opinion would seem otherwise). Under such power, Bean could be considered as having at least the powers of a special administrator. Everything he did reasonably necessary to preserve the estate would be valid and the expenditures therefore recoverable. There is no escape from this proposition unless this court

is prepared to say that even a special administrator must be chosen from the class enumerated in Sec. 102-4-1 or there is no jurisdiction to appoint. Such holding would defeat in many cases the entire purpose of special administration which is to preserve and care for the estate until someone of the interested class can assert his rights.

Continuing our review of the statutory provisions bearing on this case, we find under Sec. 102-3-15 that:

> "If the sole executor or all the executors are incompetent, or renounce or fail to apply for letters or to appear and qualify within thirty days after his or their appointment, letters of administration with the will annexed must be issued as provided for the granting of letters in cases of intestacy."

Suppose the heirs entitled are all named as executors, and they are all incompetent or all renounce without nomination of another. The court must then issue letters with the will annexed as *in cases of intestacy*. But under the ruling of the prevailing opinion the court would be helpless because no one interested might have initiated the proceedings, and according to the court's opinion initiation of proceedings by some interested party is a condition of the invoking of jurisdiction in cases of intestacy. This would certainly be true if the will were produced and offered for probate by any friend of the testator to whom it had been committed instead of the heirs named as executors. Sec. 102-3-19 also throws light on the situation. Under the case therein provided for, if a person absent from the state or a minor is named executor in a will and there is no other executor named, "letters of administration with the will annexed must be granted; but the court may in its discretion revoke them on the return of the absent executor or the arrival of the minor at the age of majority." Under the ruling of the prevailing opinion the court would be helpless to appoint an administrator c. t. a. in such case unless there were heirs or interested parties available.

It may be asked what the probate court would do in case there were two children, alone surviving as heirs—one a

married daughter, the other a dissolute son. If the son objected to her appointment under Sec. 102-4-5, she could not be appointed, and the son could not be appointed under Sec. 102-4-4 (4). If both became obdurate and refused to nominate another, the court would be helpless at least beyond appointing a special administrator who could go no further than to preserve assets.

Take the case of an estate partially administered as in the instant case. If there are no heirs available to appoint de bonis non, must the estate remain indefinitely suspended in mid-air? If no one from the interested class is available, it would seem that the estate would not have to remain open indefinitely because one not interested could go only so far as to preserve assets. Sec. 102-6-3 contemplates the naming as a successor a person having an interest only when such person is available, is competent, or when he nominates another. Otherwise, one not interested may be appointed. And as before stated, even the naming of a person not entitled is error and does not affect jurisdiction. It will serve at this point as well as at any other to allay the alarms of the prevailing opinion to the effect that if an administrator is appointed from among those not interested in the estate, it might result in disturbing the understanding of the heirs who do not desire probate and invite interlopers to seek administration for the sake of fees. Of course, it is not to be presumed that if a noninterested party applies and there is not good and sufficient reason for appointing such applicant, the court will appoint him. Courts must be presumed to have some sense. Moreover, it is hardly feasible to protect the interests of a class against an erring court by holding that every time it errs it exceeds jurisdiction. Such attempts to make judicial action fool-proof only succeed in materially restricting necessary court action. Furthermore, it is not to be supposed that interested parties available and notified will permit without protest a mere interloper to walk away with the administration that others are entitled to and lost. If such person does obtain administration officiously he will

probably find that he will not be allowed costs or compensation even though his acts are valid. These would seem to be sufficient safeguards against intermeddling.

In the case of estates under $1,500 where there are only minor children, according to the ruling of the prevailing opinion an uncle could not ask for letters of administration without first having himself appointed guardian of the minors. The statute contemplated no such thing. Situations where it would seem imperative or highly desirable to appoint one not within the class named without initiation or nomination by any of such class could continue to be presented, but it would only serve to multiply illustrations. The reader may do that.

The court's opinion states that:

"The writer is aware that this reasoning appears at first blush to be at variance with the holding in *Re Owens' Estate*, 30 Utah 351, 85 P. 277, and one or two other cases following it. However, a careful reading of the opinions in those cases discloses that the court did not construe these sections, and the holdings are not in conflict with what is here said. If in the Owens' Case the opinion is at variance with what is here said, then the question should be reexamined, but we need not be concerned with what was said in that case because the legislature has re-examined the question for us and has definitely settled the question."

It is rather odd that the decision quotes copiously from *In re Owens' Estate*, 30 Utah 351, 85 P. 277, but fails to mention *In re Owens' Estate*, 32 Utah 469, 91 P. 283, where it was expressly held that the appointment of a person not an heir before the end of three months was not void but only erroneous. In that case the secretary of a creditor corporation and an heir both applied within three months of the death. The court appointed the secretary of the creditor corporation. This was held error merely. The court correctly based its decision on the ground that the power of the court did not depend on whom it appointed. The opinion states (page 285):

"Now, what are the facts essential to give the court jurisdiction? They are that the person whose estate is to be administered died intestate, and was at the time of his death a resident of the county in which the application is made, or, if not a resident, that he left an estate in the county to be administered. *Wilkinson* v. *Conaty,* 65 Mich. 614, 32 N. W. 841. By jurisdiction is meant the right to act and the power to hear and determine a cause or matter in controversy. The right to so act and the power to determine the cause is not dependent upon the correctness of the decision. The court here heard both petitions together, as it was required to do under the statute. Upon such hearing the court had the undoubted authority to appoint an administrator. So far as concerned its power to act, the court was not obliged to appoint either of the applicants; for, upon such hearing, the court was expressly authorized by statute (section 3813, Rev. St. 1898), for good and sufficient reasons, to appoint any competent person. Upon the hearing the court appointed the respondent. The judgment so rendered was erroneous, and was subject to correction on appeal; but it was not, for that reason, void or open to collateral attack."

The prevailing opinion in this case says the "legislature has re-examined the question for us and has definitely settled the question." How did the legislature by amending the statute by providing that letters of administration must be granted to any interested applicant instead of "any applicant" affect anything but a duty of the court? The legislature did not amend Sec. 102-1-2 dealing with jurisdiction, but only the statute which specified who had the right when others better entitled failed to apply. It simply imposed a different duty on the court. It did not affect the facts necessary to the court's power. Those still remain as laid down in the case of *In re Owens' Estate,* 32 Utah 469, 91 P. 283; *In re Slater's Estate,* 55 Utah 252, 184 P. 1017; *In re Burt's Estate,* 58 Utah 353, 198 P. 1108. *In re Pingree's Estate,* 74 Utah 384, 279 P. 901, does not deal with the question of jurisdiction, but only with the widow's preferential right. Nothing in that case even hints of the assertion of the widow's preferential right as being necessary to invoke jurisdiction.

If we examine the cases from other jurisdictions and even the statements made in the prevailing opinion concerning them, we find nothing which holds that the power of the court to appoint an administrator depends upon whom it appoints. Assuming that *Langworthy, Unknown Heirs of,* v. *Baker,* 23 Ill. 438, stands for what the opinion says it does, even then it does not go to jurisdiction but to the statement of a cause of action. It might be conceded for the purposes of this case that where public administrators are provided for, the statutes may not give the court jurisdiction to appoint them unless certain averments appear in the pleading. Those statutes are not involved in this case. But the statement in the prevailing opinion that "In Illinois, it is held that before an estate can be committed to the public administrator, it must affirmatively appear that there is no relative or creditor in the state, and that the application was made by a party in interest" goes to averments needed to state a good cause for the appointment of an administrator and not to the court's power to appoint. See, *In re Goldsberry's Estate, Goldsberry* v. *Green,* 95 Utah 379, 81 P. 2d 1106.

And thus it is with other statements in the prevailing opinion. All that can be done in this dissent is to utter a warning that may in the future prevent some confusion of thought which such expressions, appearing in all too many opinions, have given rise to.

Even admitting the prevailing opinion to be correct in its holding that jurisdiction to grant letters of administration cannot be invoked except on application of an interested party or by his nomination, this case should be reversed. In this case the appointment of Bean met the requirements unless the logic of that opinion is to be applied to the appointment of an administrator de bonis non. In this case jurisdiction was first invoked by the application of one interested,—the widow. She died leaving administration uncompleted. Unless each time a successor is appointed it again takes the petition of an interested party to give a jurisdiction which seemingly even under the court's opinion

had already attached, the court had in this case jurisdiction to appoint Bean an administrator de bonis non.

It remains in conclusion to cite authorities which hold that appointment of a person outside a designated class does not affect jurisdiction but is error merely. The under mentioned citations are given in support of the propositions that (1) death and (2) residence or assets of decedent in the county in which application is made are the only essential bases to jurisdiction.

And according to 11 R. C. L. 84, Sec. 82, there is a split in the cases as to whether residence or assets is jurisdictional or a matter of venue only. Bancroft, Probate Prac., Sec. 81; Freeman on Judgments, 5th Ed., Sec. 350; 15 R. C. L. 867, 868; 23 C. J. 1007; 34 C. J., Secs. 824, 834, 846, 1286; 23 Cyc. 681-682, 1061, 1073-1074, 1083; Van Fleet, Collateral Attack, Sec. 527.

In R. C. L., Vol. 11, Sec. 84, page 86, it is stated:

"Effect of Grant of Letters to Wrong Person.—Where letters of administration have been granted on the estate of a decedent to one not entitled to the appointment, the acts of such administrator are valid although the order appointing such person may be voidable in a direct proceeding instituted by those having a superior right. This rule rests upon the doctrine that in such cases the essential basis of jurisdiction exists, and the appointment of the wrong person is but an irregularity, subjecting the order of appointment to direct attack, but not invalidating acts done in pursuance of the law, in the course of administration by him who has been erroneously appointed. Similarly where the court has jurisdiction, the grant, though irregular, is valid, and cannot be avoided collaterally by showing that the person to whom the grant was made was not competent to qualify as such administrator, or that letters were granted without notice and citation to those entitled thereto."

I have in the whole galaxy of cases found no authority to the contrary.

FOLLAND, Chief Justice (dissenting).

I concur in the views expressed in the dissenting opinion of Mr. Justice WOLFE.